# CHARLESTON.

## STONE *v.* TYREE.

Submitted January 17, 1888.—Decided February 11, 1888.

1. LIS PENDENS—DATING BACK—SERVICE OF SUBPŒNA.
    Where a bill in chancery is filed the *lis pendens* relates back to the service of the subpœna, and not to the day on which the subpœna was issued. (p. 699.)

2. SALE OF LAND—ESTOPPEL.
    If the owner of real estate, whether he has the legal title in him or not, permit such real estate to be sold in his presence by one who claims he has full power and authority to dispose of the same, and does not then assert his claim, but stands by and permits an innocent purchaser to buy such land, he is estopped thereafter from claiming such land of such innocent purchaser on the ground that the person of whom he purchased had no authority to sell such land. (p. 701.)

3. SALE—TITLE.
    In such a case a court of equity would compel the owner of the land, or the person having really the authority to convey it, to vest the legal title of such land in such innocent purchaser who

had paid the full price of the land according to the terms of his purchase. (p. 701-2.)

Statement of the case by GREEN, JUDGE:

This was a chancery suit brought in the Circuit Court of Fayette county by Jacob W. Stone and Maggie C., his wife, M. F. Brown, and Alice Jones, widow; (M. F. Brown, and the female plaintiffs, being children, legatees, and devisees of Samuel Brown, of Alleghany county, Va., and all the plaintiffs non-residents of the State,) against William M. Tyree, a resident of said Fayette county, in this State, Robert L. Parish, administrator *de bonis non* with the will annexed of Samuel Brown, and against the widow and five other children, devisees and legatees of 'said Samuel Brown, and the husbands of the female defendants, and Charles M. Gray, a son of Rachel Brown, another child, legatee and devisee of Samuel Brown, who had died leaving but this child, who had attained his majority. All of the plaintiffs and of the defendants except William M. Tyree were non-residents of this State. As this cause was decided on admissions in the pleadings, and on exhibits filed with them, no depositions or other proofs being taken, I will state the facts proven in the cause, distinguishing in stating them the pleadings and such statements in the bill and answer filed as were proven by the exhibits filed, or were undisputed by the pleadings, from the statements entirely unsustained by any evidence.

The will of Samuel Brown is filed with the bill; the second clause in it is as follows: "It is my will and desire that all my estate, both real and personal, (except my negroes,) be sold by my executors as soon after my death as shall be conducive to the interest of my estate, and in accordance with the law governing decedents' estates." The third clause in this will provided "that the net proceeds of the sale of this property, real and personal, be equally divided among all my children and wife, she to take a child's part." Thompson McCallister and Andrew Dameron were appointed his executors. This will was dated February 27, 1861, but a codicil was added to it April 27, 1861, directing that his real estate should not be sold in less than five years, and making some other provisions for his wife, and providing that if she

should elect to take under the law, and not under the will and codicil, then that all the provisions for her in the will and codicil should be null and void. This will and codicil were duly admitted to probate June, 1861, in the County Court of Alleghany county, Va., where the testator lived and died.

At the November term, 1861, of said court the widow renounced the provisions of this will and codicil, and her dower was assigned her. In the meantime the executors of the will had qualified as such at the June term of such court, and made sale of the personal property of the testator. These executors died,—one in 1870, and the other in 1882,—without either of them having sold the real estate of Samuel Brown, the testator; which real estate consisted of the testator's home farm of $572\frac{1}{2}$ acres in Alleghany county, Va., a tract of timber land in said county and a tract of land in Fayette county, W. Va., of 376 acres.

At the May term, 1882, of the County Court of Alleghany county, Va., letters of administration *de bonis non* with the will annexed were granted to Robert L. Parrish on the estate of Samuel Brown, deceased. No one ever qualified as executor of Samuel Brown, or as his administrator with the will annexed, in West Virginia, where the tract of 376 acres was situated. But on October 1, 1884, this will of Samuel Brown was duly admitted to probate in Fayette county, W. Va., and on the 7th day of October, 1884, Robert L. Parrish was appointed by the County Court of Fayette county administrator *de bonis non* with the will annexed of Samuel Brown, and duly qualified as such.

In the meantime, after the death of Thompson McCallister, one of the executors, but before the death of the other executor, Andrew Dameron, the widow and all the devisees and legatees of Samuel Brown, on March 6, 1884, entered into a written agreement under seal, one of the provisions of which was as follows: "The said Sarah W. Brown, widow as aforesaid, doth hereby further agree that whenever a majority of the parties interested in said estate shall deem it advisable to make sale of said real estate, as provided in testator's will, then the whole estate shall be sold together, including that portion thereof which has heretofore been as-

signed to said widow as and for her dower therein, and the said widow is to take in lieu thereof a commutation in cash, or to receive the interest on one third of the aggregate of sales of such realty annually, whichever she may prefer and elect." Of the persons owning the original shares of this estate, seven out of the nine, about June 16, 1883, in pursuance of this agreement, gave Robert L. Parrish, who in the meantime had qualified as administrator *de bonis non* with the will annexed, in the County Court of Alleghany county, written notice to sell all the lands of which Samuel Brown died seized as soon as practicable. Among the parties so giving this notice were all the plaintiffs in this chancery suit. The notice signed by them was as follows:

"Covington, Alleghany County, Va.,}
June 16, 1883. }

" *To R. L. Parrish, Adm'r of Samuel Brown, deceased*:

" We, the undersigned heirs at law and devisees of Samuel Brown, deceased, son of James Brown, hereby request you to make sale at the earliest practical day of the lands belonging to the estate of said Samuel Brown, deceased."

In obedience to this request, Robert L. Parrish, after advertising for thirty days by hand-bills extensively circulated and posted, and also in the Richmond Dispatch, Stanton Spectator, Stanton Vindicator, and Alleghany Tribune, exposed all the lands of the testator for sale by public auction, in front of the Mansion House, near Callaghan's, in Alleghany county, W. Va., on August 25, 1883. The lands so advertised and publicly sold were the tracts of land before mentioned, including said tract of land in Fayette county, W. Va. The terms of the sale were one third of the purchase-money in hand, and the residue upon a credit of one and two years, in equal instalments, purchasers to execute bonds with approved personal security bearing interest from date; and the legal title to be retained as further security until all the purchase-money was paid. At this sale the home-farm was purchased by Mrs. Emma V. Brown, a legatee and distributee, wife of William M. Tyree, at the price of $6,500.00. The timbered tract of land in Alleghany county, W. Va., was purchased by one Huddleston, for $750.00; and the tract of land in Fayette county, W. Va., was purchased

by the defendants in this suit, William M. Tyree and others, for $1,128.00; and the terms of sale were complied with by all the purchasers.

The prices obtained were the full and fair value of the several parcels of land when sold, but some of the legatees and devisees of Samuel Brown were dissatisfied with the price obtained for the home-place; but all were perfectly satisfied with the prices obtained for the other two tracts, including the Fayette county, W. Va., tract, purchased by William M. Tyree. Among those dissatisfied with the price obtained for the home-farm were all the plaintiffs in the present suit; and they threatened to bring a suit to set aside the sale of the home-farm to one of the legatees and devisees, Emma V. Brown. Under these circumstances, Robert L. Parrish, administrator *de bonis non* with the will annexed of Samuel Brown, brought a suit in the Circuit Court of Alleghany county against all the plaintiffs in this suit, as well as all others interested in the estate of Samuel Brown, asking the direction of the court as to the distribution of the cash-payment he had received on the sale of these lands, and for a general settlement of his accounts as administrator *de bonis non* with the will annexed.

The plaintiffs in the suit before us and one other of the legatees and devisees of Samuel Brown filed an answer and cross-bill, in which they admit the facts above stated, but say that when they signed the above notice dated June 16, 1883, requesting the plaintiff to sell the lands of said Samuel Brown at the earliest practicable day, they did so with the understanding that the "home-farm" should be divided into parcels and sold in that way. They say they believe that both the timber-tract of land in Alleghany county, Va., and the tract of land in Fayette county sold for a sufficient sum, but deny that $6,500.00 was a fair price for the home-farm, and that William M. Brown, who bought the land for his wife, Emma V. Brown, one of the devisees and legatees of Samuel Brown, prevented persons from bidding for it when it was first offered in parts by making known that he wished to buy the whole farm, and if any person bid for a part of it when it was offered for sale, he would make him give for it more than it was worth, and thus deterred them from bid-

ding, and when the whole farm was offered together he was the only bidder; he bid for it but $6,000.00, and would have bought it at that low price had he not been told by Robert .L. Parrish, administrator, that if he did not increase his bid $500,00 he would take the farm down, and not sell.

They further say that immediately after the sale they protested earnestly against his accepting this bid of $6,500.00 for the home-farm, and asked him to reject the bid, as he had by the notice given a right to do; and they insisted the land was worth more, and would bring more if sold in parcels; but he refused to do so and closed the sale. They say it was worth $8,000.00, and would have been sold a few years before to one Miller for that price, but William M. Brown was chiefly instrumental in defeating this sale to Miller. They ask that this sale of the home-farm to Emma V. Brown may be set aside and a resale made. In this suit a settlement of the accounts of R. L. Parrish, administrator *de bonis non* with the will annexed of Samuel Brown, was made, and among the items he was charged with $376.00, the cash payment of William M. Tyree for this Fayette county, W. Va., land. This settlement was excepted to by the plaintiffs in the suit before us, because he was charged with this purchase-price of this Fayette county land received by him on this ground: " This land lies in West Virginia, and as the will of Samuel Brown had never been admitted to probate in that State, and no one ever having qualified there, the administrator in Virginia had no authority to sell lands in West Virginia."

The court, on September 24, 1884, decreed—*first*, that no reason is shown for impeaching the sale of the " home farm " of Samuel Brown, deceased, made by Robert L. Parrish, the administrator with the will annexed, on the 25th day of August, 1883, and that the said sale stand firm and stable; *second*, that the cross-bill of Sarah W. Brown and others in this cause be, and the same is hereby, dismissed, and that the defendants therein, Emma V. and William M. Brown, recover against the complainants in said cross-bill their costs about their said suit expended; *fifth*, that the exception of Jacob M. Stone and wife and Millard F. Brown to the report of Master Commissioner Hobbs is not well

taken, the court being of the opinion that the sale of the Fayette county land in West Virginia by L. R. Parrish, administrator, is legal and valid, and said exception is therefore overruled, and said report of Master Commissioner Hobbs is approved and confirmed; *seventh,* Robert L. Parrish is hereby appointed a special commissioner, and clothed with authority, and directed as such, as well as in his capacity as administrator as aforesaid, to convey with special warranty to the several purchasers the lands sold by him belonging to said estate whenever the whole purchase-money shall have been paid.

Shortly afterwards, as before stated, R. L. Parrish took out letters of administration on the estate of Samuel Brown, after having had his will properly probated in Fayette county, W. Va.; and, the whole of the purchase-money for the 376 acre tract having been paid to him by the defendant in the suit before us, William M. Tyree, he executed to said Tyree in Alleghany county, Va., where Tyree then was, on January 22, 1885, a deed for this tract of land, which recites briefly the above facts, so far as they related to this tract of land and his right to convey the same, and concludes thus : " Now, therefore, this deed witnesseth that the said R. L. Parrish, administrator *de bonis non* with the will annexed of Samuel Brown, deceased, duly qualified in the County Court of Alleghany county, Virginia, and also in the County Court of Fayette county, West Va., and also special commissioner of the Circuit Court of Alleghany county, Virginia, in the causes above named, party of the first part, in consideration of the premises and of one dollar to him in hand paid, doth hereby grant and convey with special warranty to said Wm. M. Tyree, of Fayette county, in West Virginia, party of the second part, the tract of land hereinbefore described as having been sold to him, containing three hundred and seventy six acres, be the same more or less. Witness the following signature and seal. Ro. L. PARRISH. [SEAL.] Adm'r *d. b. n. c. t. a.* of Samuel Brown, dec'd, and Com'r Cir. Court of Alleghany co., Va." This deed was acknowledged the same day, January 22, 1885, before the clerk of the County Court of Alleghany county, Va., for recordation in the County Court clerk's office of Fayette county, and it was recorded there on February 25, 1887.

One week prior to the execution of this deed in Alleghany county, Va., to William M. Tyree, the plaintiffs in this suit had issued their summons in chancery against him and others, as before stated. This summons was served on William M. Tyree; but when, the record does not show. The bill was not filed until March rules, 1885, and order of publication against all the defendants other than Tyree was awarded, they being all non-residents; and at April rules this order of publication was completed, and the cause set for hearing as to all the defendants. The bill alleges the facts above stated, omitting the fact that the devisees and legatees of Samuel Brown or his widow had entered into the agreement of March 6, 1884, and that in persuance thereof seven ninths of those so interested, including all the plaintiffs in this suit, subsequently, on June 16, 1883, gave a written notice to R. L. Parrish, the then administrator of Samuel Brown, to make sale of all the lands of the estate at the earliest practicable day.

The proceedings, too, of said chancery cause in Alleghany county are stated in the bill very indefinitely and briefly. The above statement of them is made from the record of this suit filed as an exhibit with the answer of William W. Tyree to this bill. The bill also failed to state when and where the deed was executed by R. L. Parrish, administrator and special commissioner, to William M. Tyree, or, indeed, to make any direct allegations about the deed further than are to be inferred from parts of the bill hereinafter quoted. But in addition and contradiction to the above facts the bill alleges :

" Mr. Parrish, the administrator, had never seen the Fayette lands, nor did he know anything about their condition or value. None of the heirs who were present at the sale had ever been on the land, nor had they any knowledge of its value or condition. When this land was put up Mr. Parrish asked William M. Tyree, who lives in Fayette county, W. Va., and knew the land well, [owning lands adjoining it,] and who came to the said sale for the purpose of bidding on this land, about its value, and Mr. Tyree said that the land was worth about $3.00 per acre, and that he would give that for it. There being no other bidders present the land was sold to Mr. Tyree at that price without objection from

the heirs; they believing at the time that $3.00 per acre was somewhere in the neighborhood of its value, and they knew no better for some time afterwards. * * * Further, complainants charge and believe that at this time William M. Tyree had made a conditional sale of this very land at $10.00 per acre. * * * They charge and believe that Wm. M. Tyree kept persons away from the sale of this land made on the 25th of August, 1883, who knew of its value, and who would have paid more for it than he did. * * * That upon the very day Robert L. Parrish qualified as administrator *de bonis non* with the will annexed of Samuel Brown, deceased, a responsible party offered him $3,000.00 for the Fayette county lands, and announced his ability and willingness to comply with the terms upon which the lands in Virginia had been sold; but Mr. Parrish refused this offer, still holding that the former sale of Tyree was a valid and legal sale." The prayer of this bill is " that your Honor will set aside and annul the sale and deed made of Fayette county lands belonging to the estate of Samuel Brown on the 25th day of August, 1883, at which sale Wm. M. Tyree became the purchaser, and that you will direct a resale of the same," and for general relief.

A demurrer to this bill was filed by William M. Tyree, and issue joined on it; but the court never acted upon it. William M. Tyree offered to file a plea in bar to this bill. The filing of it was objected to, and he withdrew it, and filed an answer, which states the facts of the case as above stated, and established them by exhibits filed herewith; he replied to the additional facts and charges in the bill above stated as follows: " He denies that none of the heirs who were present at the public sale had ever been on the Fayette county land, nor had any knowledge of its value or condition, but on the contrary, one of the heirs, William M. Brown, had just a few days previous to the sale been over the land, had seen its location and surroundings, and was soliciting bidders for it, making inquiries of its value, and he was present at the the sale, and expressed himself fully satisfied, declaring that the land had brought all that he expected it would sell for. This defendant denies that Robert L. Parrish made

any inquiry of him as to the value of the land, or that the plaintiffs knew nothing of its value. He denies that he had made any conditional sale or any kind of sale of this land at $10.00 per acre, or at any price, at the time he purchased it from Parrish, administrator as aforesaid; that he did not make any sale of this land till August, 1884, one year after, and this last sale was not closed till December, 1884. Defendant alleges that he paid a fair and adequate price for this land; and as an evidence of this defendant says that in February, 1884, he purchased from Joseph Piercy a tract of 600 acres adjoining this 376 acres, which is equally as valuable, if not more so, at private sale for two dollars and fifty cents per acre. * * * Defendant is not advised as to the truth of the allegation that said Parrish was offered $3,000.00 for this land but if the allegation be true, the said Parrish properly refused to sell again what he had already sold to this defendant, which sale, as appears from the bill had already been adjudged valid by the said Circuit Court of Alleghany county, Va. * * * Defendant positively denies that he kept persons away from the sale, who knew of its value, and who would have paid more for the land than he did; but, on the contrary, the defendant in no manner did anything to decry or injure the sale, or prevent any person from bidding thereat."

This answer denies that the circumstances of the purchase of this Fayette county land at the public sale are correctly stated in the bill. He states in detail the circumstances of his purchase. I do not deem it necessary to state them further than what has been done, as they are not evidence for the defendant, except so far as proven by the exhibits filed with the answer, and to that extent they have been stated; but it is proper to say that there is nothing whatever which is there stated which in any way shows any unfairness of any sort on the part of the defendant, William M. Tyree, in the purchase of this land. If there had been, it would be evidence against him; but as no such statements are made, I deem it useless to state the rest in detail. The defendant, by not denying the statement in the bill, admits that this Fayette county land adjoins the home-farm of

William M. Tyree, and that Robert L. Parrish never had been upon the land.

There is a further allegation in the answer that previous to the institution of this suit the plaintiffs sold and assigned all their interest in the matter in controversy to A. Middleburg, and he was allowed to use their names in this suit, and they were to be paid in the proper time stipulated, if Middleburg succeeded in this suit; and it alleges facts in reference to Middleburg which, if true, would reflect much on his honor; but as there is no proof of any of these allegations, all that is said about him need not be stated as it must all be disregarded.

To this answer the following exceptions were filed:

"*First.* The within answer is excepted to by the plaintiffs in so far as it attempts to set up the suit in Virginia therein mentioned, ' and the decree in said suit, as a defence to this suit, because the courts of Virginia have no jurisdiction to decree or authorize the sale and transfer of lands in this State, or the title thereto.'"

"*Second.* And said answer is also excepted to in so far as it sets up the sale by R. L. Parrish, administrator, etc., before his qualification in this State, or the deed by him mentioned in said answer, and made since this suit was brought, as a defence to this suit."

"*Third.* They also except to said answer in so far as it attempts to set up the alleged action of A. Middleburg in the premises as a defence to this suit."

The plaintiff replied generally to this answer, when these exceptions were overruled by the court. No answer was filed by any of the other defendants, all of whom were non-residents, against whom order of publication had been made and executed. On May 28, 1886, the following decree was entered:

"This day came the defendant, Wm. M. Tyree, and by leave of the court withdrew his plea filed in this cause at a former term of this court, and tendered his separate answer to the bill, which is ordered to be filed; and thereupon the complainants filed their exception to said answer, which exceptions were argued by counsel; and the court, being of opinion that the suit in Alleghany county Circuit Court,

State of Virginia, mentioned in the answer, and the qualification of R. L. Parrish as administrator *d. b. n. c. t. a.* of Samuel Brown, deceased in this State, and the deed made by him as such to defendant, Tyree, were sufficient to validate and make good the sale and conveyance to the defendant, Wm. M. Tyree, of the land in Fayette county, West Va., mentioned in the bill, doth overrule said exceptions Nos. one and two; and thereupon the plaintiffs, without waiving any right or benefit by reason of said exceptions, doth reply generally to said answer; and this cause coming on to be further heard upon the bill and exhibits herewith filed, and the answer aforesaid, and the exhibits therewith, and general replication to said answer, was argued by counsel, upon consideration whereof the court being of the opinion that the plaintiffs are not entitled to the relief prayed for, it is adjudged, ordered, and decreed that the bill be, and the same is hereby dismissed."

From this decree the plaintiffs have obtained an appeal.

*J. F. Brown* for appellants.

*J. M. Payne* for appellees.

GREEN, JUDGE:

The counsel for the appellants insist that this cause should be decided upon the case as it was when the summons was issued January 15, 1885, and that the rights of no parties to this cause can be changed by the fact that Robert L. Parrish, the administrator *de bonis non* with the will annexed of Samuel Brown, deceased, who had qualified as such in this State, one week afterwards, on January 22, 1885, conveyed the 376 acre tract lying in Fayette county, W. Va., to the defendant William M. Tyree, by a deed which was duly recorded afterwards; that this conveyance was made *pendente lite*, and therefore can not affect the rights of any of the parties to this suit. This position can not be sustained; for, so far as is shown by this record, this deed of the land, the subject of controversy, was not made *pendente lite*. The law is thus stated by Judge Green in *Newman* v. *Chapman*, 2 Rand. 93:

" The necessity of the doctrine of *lis pendens* is so obvious that there was no occasion to resort to the presumption that

the purchaser had notice, or by inquiry might have had notice, of the pendency of the suit, to justify the existence of the rule. In fact, it applied in cases in which there was a physical impossibility that the purchaser could know, with any possible diligence on his part, of the existence of the suit, unless all contracts were made in the office from which the writ was issued, and on the last moment of the day; for at common law the suit was pending from the first moment of the day on which it was issued and bore *teste;* and a purchaser on or after that day held the property subject to the execution upon the judgment in that suit, as the defendant would have held it if no alienation had · been made. The court of chancery adopted the rule, in analogy to the common law, but relaxed in some degree the severity of the common law; for no *lis pendens* existed till the service of of the subpœna, and bill filed, but it existed from the service of the subpœna, although the bill was not filed until long after. So that a purchaser after the service of the subpœna, and before the bill was filed, would, after the filing of the bill, be deemed to be a *lite pendente* purchaser, and as such be bound by the proceedings in the suit, although the subpœna gave him no information as to the subject of the suit. A subpœna might be served the very day on which it was sued out, and there is an instance in the English books of a purchaser who purchased on the day the subpœna was served, without actual notice, and who lost his purchase by force of this rule of law."

The law as thus stated was acted upon by this Court in *Harmon* v. *Byram's Adm'r*, 11 W. Va. 511. The first point in the syllabus of that case is: "A subpœna served is not a sufficient *lis pendens*, but when the bill is filed the *lis pendens* relates back to the service of the subpœna." As the bill in this case was filed at the March rules, 1885, the *lis pendens* relates back, not to the 15th of January, 1885, the day the summons was issued, but to the day it was served. Now, the appellants, who rely here, as they did in the court below that this deed to William M. Tyree of the tract of land of 376 acres in Fayette county, W. Va., came within the rule of *lis pendens*, must show that this summons was served on some party to the suit prior to the making of this deed.

The burden of showing this is on the plaintiffs below, (the appellants.) In the record before us they not only fail to do so, but the record goes very far to show that the summons in this case was not served on any of the defendants prior to or on the 22d of January, 1882. The record shows that it never was served on any defendant except William M. Tyree. All the others were non-residents, and were proceeded against by order of publication, and never did in any answer or in any manner appear in this cause.

It is true that the record shows that this summons was served on William M. Tyree, and while the court below knew exactly on what day it was served, yet the plaintiffs in this cause (the appellants) in having the copy of the record made out, content themselves with the certificate of the clerk that the summons was issued on January 15, 1885, and that it was duly executed on William M. Tyree, the only home-defendant; but there is no statement as to when it was served, though the return of the summons that it was served on William M. Tyree, which was what the clerk based this certificate on, showed the day it was served; yet the clerk fails to certify on what day it was served,—the plaintiffs' counsel, who had this record copied, doubtless regarding it as unimportant to state the day, as it was subsequent to January 22d, 1885, and unless he could claim that the suit, so far as this rule of *lis pendens* was concerned, related back to the issuing of the summons, the exact date of its service he regarded as immaterial. That he can not claim the *lis pendens* as relating back to the issuing of the summons, but only to the time of the service of the summons, we have shown. The failure of the plaintiffs, when it was so easy for them to have the record so made as to show when the summons was served on William M. Tyree, as well as the failure to allege in the bill that this deed was executed after the summons was served on William M. Tyree, is, it seems to me, strong evidence that it was served after January 22d, 1885. And I further suppose that this was so, because, as the defendant was in Alleghany county, Va., a week after the writ was issued, as shown by this deed being there and then executed to him, it is highly improbable that this summons had then been served. The wording of the decree of the court

below shows that the court regarded the making of this deed as making good the public sale of this land to Willian M. Tyree ; and the inference from this is that this deed was not made after the service of the summons on him in this cause.

But I regard it as really unimportant in this particular case whether it was or not, because this public sale to William M. Tyree of this tract of land in West Virginia was made under such peculiar circumstances as rendered it valid and binding on the appellants; and this sale should have been enforced specially by a court of equity, even if the law should be, as claimed by the appellants' counsel : that an administrator *de bonis non* with the will annexed can not make a sale of real estate without having first qualified in the State, though the will of the testator authorized a sale by his executors of all his real estate wherever situated. I propose to show that the facts in this case render this public sale valid, even though when it was made, Robert L. Parrish, the administrator, etc., could not, if the facts had been different, make a valid sale of the West Virginia lands.

It is recognized as law that if the owner of real estate, whether he has the legal title in him or not, permits such real estate to be sold in his presence by another who claims to be the owner of the land, or by one who claims that he has full authority and power to dispose of the same, it is the duty of the true owner of the land to assert his claim then ; and if he stands by and permits an innocent purchaser to buy such land from such person claiming to have full power to dispose of it, he will be estopped thereafter from setting up any claim to such land, because of a want of full power and authority on the part of the person selling it to make good title thereto, as against such innocent purchaser, by his acquiescence at the time in the legality of such sale made in his presence.

Whenever in this or in any other manner such owner of land misleads another by his conduct or words into the belief that a third person owns certain land, or possesses full power and authority to sell it, and he knows that such conduct or words would naturally have this effect, whether he intended then to defraud such purchaser or not, he will not only be estopped from claiming against such innocent pur-

chaser this land because in fact the person so selling it as his own, or as having full power and authority to sell it, either did not own it, or had no authority to sell it, such as he claimed, but the courts of equity go further, and would, under such circumstances, compel him to convey such land to such innocent purchaser; otherwise such owner of the land would be permitted by claiming it to commit a fraud on such innocent purchaser, whose title or right does not depend upon the authority or title to sell of the person of whom he purchased, but is derived from the acts of the real owner, precluding him from disputing what he had in effect asserted,—the right of such third person to sell this land. This he would not be allowed to do to the prejudice of the innocent purchaser whom he had so misled. See *Jowers* v. *Phelps*, 33 Ark. 468; *Powers* v. *Harris*, 68 Ala. 409; *Lippmins* v. *McCanie*, 30 La. Ann. 1251; *Pence* v. *Arbuckle*, 22 Minn. 417; *Chapman* v. *Pingee*, 67 Me. 198; *Eldridge* v. *Walker*, 80 Ill. 270; *Favill* v. *Roberts*, 50 N. Y. 222.

This last case, while laying down the law of estoppel *in pais* no stronger than other cases, is yet so pertinent to the case before us that I will state the facts of the case, as stated in *Jowers* v. *Phelps*, 33 Ark. 468. "Estoppels *in pais* depend upon facts which are rarely in any two cases precisely the same. The principle upon which they are applied is clear and well defined. A party who by his acts, declarations, or admissions, or by failure to act or speak when he should do so, either designedly or with willful disregard of the rights of others, induces or misleads another to conduct or dealings which he could not have entered upon but for this misleading influence, will not be allowed afterwards to come in and assert his right to the detriment of the person misled. This would be a fraud. But it is difficult to define special acts or conducts which in all cases would amount to an estoppel. Generally it is said that if the owner of property, with a full knowledge of the facts, stands by and permits it to be sold to an innocent purchaser without asserting his claim, he will be estopped. Although this will not embrace all species of estoppel *in pais*, which may be as diverse as the nature of human transactions, it is, so far as it goes, about as safe and correct a rule as can be formulated.

The leading idea is that a person shall not do or omit to do anything with regard to his rights which, if taken advantage of by him, would work a fraud upon another; but in this, as in all other cases involving fraud, the exact limits and boundaries of fraudulent conduct are left undefined, to be applied by the chancellor to the facts before him. There are no cases which seem to require the equitable owner of property to be active in seeking one about to take the legal title, for the purpose of advising him against it. He must see to it at his peril that some mode which courts of equity recognize as sufficient notice of his equity be given to all the world, or that such particular notice be brought home to the purchaser as should put him upon it until inquiries be made, upon which there would devolve upon him the further duty of full, frank and explicit explanation. Men are not required to be clamorous in asserting their rights, or to be active in seeking others about to deal concerning them in order to prevent anticipated mischief. To stand by and see a sale to an innocent purchaser would be, however, a breach of moral duty, unless the owner meant to abide by it."

This defines more accurately than I have seen elsewhere an estoppel *in pais* when applied to the sale of real estate.

The case of *Favill* v. *Roberts*, 50 N. Y. 222, corresponds more nearly in its facts to the case before us than any other I have seen. The syllabus is: "When a will gives to the executor no authority to sell the testator's real estate, or to control it, but with the knowledge of the heirs he applies to the court, and obtains an order authorizing him to sell, and with the consent and request of the heirs he does negotiate a sale, receives the purchase-money, and conveys by deed, the heirs also informing the purchaser that the executor is the authorized agent to make the sale, the purchaser has a right without further inquiry to rely on the truth of such assurance, and the heirs are estopped from disputing them or thereafter asserting title to the land conveyed upon the ground of want of authority in the executor. And when the purchaser has paid the contract price, entered into possession, and made valuable improvements with the knowledge of the heirs, he can maintain an action against them to com-

pel them to execute a conveyance to him, so as to give him a valid title."

The court says, page 226: "The purchaser was under no obligation as to them to examine the will, the order, or the papers upon which it was founded. There was nothing to excite suspicion. The plaintiff was the purchaser and parted with his money in good faith. If the appellants knew that the order was invalid, they were guilty of a gross fraud, which would be successful unless they are estopped from disputing the assurances given by them upon which the plaintiff acted in making the purchase and parting with his money. Under these circumstances they are estopped. *Storrs* v. *Barker*, 6 Johns. Ch. 166; *Higginbotham* v. *Burnet*, 5 Johns. Ch. 184. But suppose, what is more probable, that they were ignorant of the invalidity of the order of the court and really believed it conferred power on Lewis to sell and convey their interest in the land; this will not aid the appellants. We have already seen the plaintiff had the right to assume that they were acquainted with their own title, and with the extent of the authority of Lewis to dispose of their interest in the land, and to act upon such assumption. See *Storrs* v. *Barker*, 6 Johns. Ch. 166. The counsel for the appellants insist that a party is not estopped by his assurances as to the law. But the assurances of the appellants were not confined to this; their correctness depended much more upon facts than upon legal conclusions. To determine whether Lewis was authorized by the order to make sale, a knowledge of the contents of the will was necessary, and of the proceeding procuring the order. Of these the plaintiff was ignorant, but the appellants were presumed to know. These might have been such as to make the order valid; and the plaintiff had a right to act upon the assurances of the appellants to that effect, and having so acted, paid his money, entered into possession, made valuable improvements with their knowledge, equity will estop them from asserting title to the land upon the ground of want of authority in Lewis to make the sale. But this is an action of the plaintiff to compel them to execute a conveyance to the plaintiff, so as to give him a valid title of record. The proof of the facts estopping the appellants depends upon the tes-

timony of witnesses which may be lost by their death.   Under such circumstances, an action in equity will be sustained to remove the clouds and perfect and quiet the title.   *Wood v. Seely,* 32 N. Y. 105."

The facts in this case which estopped the appellants from objecting to the sale of the 376 acres of land by Parrish, on the ground that he had not qualified as administrator *d. b. n. c. t. a.* in West Virginia, are as follows :   They and all the other devisees and legatees of Samuel Brown had, on March 6, 1874, together with the widow of Samuel Brown, entered into an agreement, given in full in the statement of this case, that whenever a majority of the parties interested in the estate of Samuel Brown (and they were, by his will, being his children, all equally interested, except the widow, with whom they compromised by this agreement) should deem it advisable to make sale of all his real estate as provided by his will, (which was by a sale by his executors,) the whole of it should be sold, including the dower-interest of his widow, she being entitled to a commutation for her dower out of the proceeds of the sale.   Parties owning seven out of nine of these equal interests, together with the widow, had on or about June 16, 1883, requested in writing Robert L. Parrish, who had qualified as the administrator *de bonis non* of Samuel Brown in Virginia, to sell at the earliest practicable period all the lands belonging to the estate of Samuel Brown, deceased.

It is of course to be presumed that they then knew that neither he nor any one else had qualified as the personal representative of Samuel Brown, deceased, in West Virginia.   This presumption arises, not simply because every one is presumed to know what relates to the title to his own land,—as was done in the New York case,—but from the fact that it would seem impossible that they should be ignorant of the qualification of any one in West Virginia to administer on their father's estate, as he owned nothing in this State but this single tract of land of 376 acres in Fayette county, and no one could qualify there as his representative with any other view or purpose than to sell this land, which really belonged to them, the children of the testator ; and their previous evident agreement with reference to the sale of his

89

real estate shows that they were attending to and looking after the sale of this real estate. Knowing all the facts, they gave this written direction to the administrator *de bonis non* in Virginia to sell these lands at the earliest practicable period. This direction was signed by all the plaintiffs in this chancery suit, as well as by nearly all the other children of Samuel Brown, as well as his widow. The plaintiffs signed these written directions.

June 16, 1883, Robert L. Parrish, administrator with the will annexed of Samuel Brown, deceased, in accordance with this request advertised all the lands of Samuel Brown, deceased, extensively by hand-bills and in various newspapers, to be sold at public auction at Callaghan's Station on the Chesapeake & Ohio Railroad. This advertisement was signed by him as administrator *de bonis non* with the will annexed of Samuel Brown, deceased, but it did not state where he had qualified,—whether in Virginia or West Virginia, or whether in both of these States. The lands advertised consisted of the "home-place" and one other tract of land in Alleghany county, Va., and this tract of 376 acres in Fayette county, W. Va. The widow, the plaintiffs in this suit, and at least two others of her children, devisees and legatees as appears from the bill in this cause, and the proceedings in the chancery suit in the Circuit Court of Alleghany, referred to in the bill, were present at this sale.

Though most of the family were personally present at this public sale and taking a deep interest in it, all of them, including the plaintiffs, saw this tract of land of 376 acres lying in Fayette county, W. Va., sold by their direction, at public auction to William M. Tyree, a resident of Fayette county, W. Va., for $1,128.00, its fair market value then; and saw Tyree comply with the terms of the sale, at once paying down to Parrish, one-third of the purchase-money, and executing his bonds to Parrish, payable in one and two years, with interest from date, and giving good personal security for these deferred payments, and none of them intimated that he had not full authority to sell this tract of land, and while some of the parties interested, including the plaintiffs in this suit, protested against the home-place being sold at $6,500.00, the highest bid for it,

and threatened to bring a suit to have this sale of the
home-place set aside, claiming that it was worth $8,000.00,
yet, no protest or dissent to this 376 acres being cried down
to Tyree at the price he bid for it, was made, either by the
plaintiffs in this suit, or any one else, nor was any sort of ob-
jection made to this sale to Tyree by the plaintiffs or any
one else, till about 13 months after this sale when two of
the plaintiffs in this suit filed an exception to a commis-
sioner's report in the chancery suit in the Circuit Court of
Alleghany county, Va., because this land lay in West Vir-
ginia, and the will of Samuel Brown had never been ad-
mitted to probate in that State, and, no one having qualified
as administrator in West Virginia, no one had authority to
sell this tract of land.  Though these very parties and the
other plaintiffs in this chancery suit now before us had some
seven months before filed a cross-bill and answer in this suit
in the Circuit Court of Alleghany county, Va., in which they
sought to set aside the sale of the home-place in Alleghany
county, Va., as sold at an inadequate price, they made no
sort of complaint of this sale of the Fayette county land.
But they state that at this public sale of this land, at which
they were present, "they believe that this Fayette county land
had sold for a sufficient sum," and made no statement that
Parrish was not fully authorized to sell the same at this
sale.

Now the plaintiffs in this chancery suit now before us
must be estopped from ever claiming title to this tract of
land in Fayette county so sold by Robert L. Parrish, admin-
istrator with the will annexed of Samuel Brown, deceased,
at a public auction at their request, and in their presence,
of which sale they made no complaint for more than a year.
If ever there was a case where parties should on the princi-
ples we have stated be estopped from now denying the
authority of the administrator, to sell the land, surely this is
a proper case.  They knew, doubtless, as a matter of fact,
that R. L. Parrish had never qualified as the personal repre-
sentative of their father, Samuel Brown, deceased, in the
State of West Virginia, and they would be by the law pre-
sumed to know this.  The purchaser, William M. Tyree,
makes no inquiry upon the subject, being lulled to sleep by

their conduct. He had a right to assume, under these circumstances, that the authority of R. L. Parrish, was unquestionable as it was unquestioned to sell their Fayette county, W. Va., land either by his having qualified in West Virginia as the personal representative of Samuel Brown, or by a proper power of attorney executed to him by the devisees and legatees of Samuel Brown, or in some other manner. He was publicly proclaimed as having this authority by the extensive advertisement of the sale of this land by him as administrator *de bonis non* of Samuel Brown; and Tyree was further assured of it by this sale in this capacity being made in the presence of most of the family, and especially of the plaintiffs in this suit, without the slightest intimation that there was any defect in this authority to make this sale in the capacity and manner in which it was made. He paid his money and complied with the terms of the sale, and it would be a fraud on him to permit the plaintiffs in this suit to be allowed to set it aside because it was unauthorized. If they had any such objection to this sale, they were bound to make it on the day of sale, and before an innocent purchaser of this land had made the cash-payment, and given security for the deferred payments.

When R. L. Parrish subsequently had the will of Samuel Brown admitted to probate in Fayette county, W. Va., and qualified as the administrator *de bonis non* of Samuel Brown, he properly approved this sale; and, had he violated his faith, and accepted a higher price for this land, offered by another more than a year after the sale to William M. Tyree, as the appellants' counsel claims he ought to have done, the court would have enjoined him from so doing, and compelled him to convey this land to William M. Tyree whenever all the purchase-money due was paid by him.

Counsel, both for the appellants and appellees, have discussed the following questions at great length: "*First.* Could Parrish, by virtue of his appointment and qualification in Virginia, sell and convey lands in West Virginia? *Secondly.* Could the court of Virginia, by confirming such a sale of West Virginia lands, render such sale valid, and by its commissioners pass title to such West Virginia lands?" Many authorities were referred to by both sides on these

questions. I have not examined the authorities because, according to the views above expressed, it is entirely unnecessary to decide the questions in this cause.

While the decree of the Circuit Court of May 28, 1886, might well be criticised, yet there is nothing in it prejudicial to the appellants, but it is prejudicial to the appellees, obviously, in this: that while it dismissed the bill of the plaintiffs, it does not decree that they should pay to the defendant, William M. Tyree, his costs in the Circuit Court of Fayette county expended, as it should have done. In this respect it must be amended, and then affirmed, and the appellees must recover of the appellants their costs in this Court expended and $30 damages.

AMENDED.    AFFIRMED.

# CHARLESTON.

