# CHARLESTON.

BATES *v.* SWIGER *et al.*

Submitted January 28, 1895—Decided April 6, 1895.

1. SPECIFIC PERFORMANCE—INNOCENT PURCHASER.
   Where a vendor by executory contract, has conveyed the legal title to a subsequent purchaser for value, without notice, there can not be specific performance of the executory contract in favor of the first purchaser; but, if the second purchaser had notice, there can be, the conveyance to him being void as to the first purchaser, and he can be compelled to convey the land, without warranty, to the first purchaser. Proper decree in such case.

2. SPECIFIC PERFORMANCE—OUTSTANDING INCUMBRANCE—GENERAL WARRANTY.
   Where the land is subject to a life maintenance in favor of a third party, that is no impediment to a specific performance of a contract of sale with general warranty, if the purchaser will accept a conveyance with such warranty, and rely upon it for indemnity against such incumbrance.

3. CHARGE ON LAND.
   A reservation or charge upon land, in a conveyance, for maintenance for life, is valid, though no amount be fixed.

4. ESTOPPEL IN *Pais*—CHARGE ON LAND.
   One owning or having any interest in or charge upon land, knowing that another is about to purchase it, who declares to such other person, that he has no interest in the land, and that the one proposing to sell has the absolute right to the land, can not set up any ownership, interest, or charge, then existing, hostile to the right acquired by such purchaser.

5. ESTOPPEL IN *Pais.*

Where one, by words or conduct, intentionally causes another to believe in the existence of a certain state of things, or such words or conduct are of such nature as he has reason to believe will cause him to so believe, and such other, not knowing to the contrary, acts thereon, the former will be estopped from averring or claiming under a different state of things, then existing and known to him, to the prejudice of the other party.

6. SUBROGATION.

Subrogation, being merely the creature of equity, and not of contractual nature, will be administered only in harmony with its fixed rules, in furtherance of justice.

7. SUBROGATION.

Subrogation is not given to one who officiously, as a stranger, pays a debt of another.

8. SUBROGATION—FRAUD.

One guilty of fraud in the transaction in which he asks subrogation, as one who asks it must come before the court with clean hands, can not have subrogation. Therefore, a second purchaser, who, with notice of the right of a first purchaser, pays off a lien on the land, can not ask to be substituted to it.

M. R. CROUSE and Millard F. Snider for appellee, cited Jones Liens. § 1071; 8 Leigh 522; 30 W. Va. 687; 3 Pom. Eq. Jur. § 1252; 2 Jones Liens § 1116; Story Eq. Jur. §§ 384, 385, 390; Sug. Vendors (Ed. 1807) 480; 33 Ark. 468; Hennan Estop. § 776; 19 S. E. Rep. 539; 6 Johns. Chy. 166; 5 Johns. Chy. 184; 30 W. Va. 687; 26 Gratt. 549; 39 W. Va. 732; 10 W. Va. 677; 87 Va. 391; 2 Rob. (Old) Prac. 170; 2 Min. Inst. 871; 2 Story Eq. Jur. § 751; 13 W. Va. 388; 20 W. Va. 272, 279; 10 Leigh 179; 9 W. Va. 154; 1 P. & H. 277; 26 W. Va. 754; 27 W. Va. 229.

J. V. BLAIR for appellants.

BRANNON, JUDGE:

Charlotte A. Swiger, by executory contract, sold to Squire Bates a tract of land. The consideration was nine hundred dollars, of which he paid down twenty dollars, and was to pay one hundred and eighty dollars more in money to Charlotte A. Swiger, and pay off a deed of trust to McMillan, when the deed should be made to Bates, and the remainder was to be paid in three annual installments.

This land had been conveyed to Charlotte A. Swiger by her father and mother, William L. Swiger and Elizabeth Swiger, by a deed reserving to them "their lifetime maintenance in said land."

Some short time after the sale, Bates met Charlotte A. Swiger and her father and mother at their home, counted out the one hundred and eighty dollar balance of cash to be paid under the contract, tendered it, and asked for his deed, which was refused; and they said they would pay the twenty dollars back, and got it, and proposed to refund it to Bates. Bates declined to receive it, saying it was the land he wanted, and insisted upon the performance of the contract; and, as Charlotte A. Swiger would not receive the one hundred and eighty dollars, he left it on the table, in their presence, and left the house. He had in the meantime paid a small part of the McMillan deed of trust debt, and had received from McMillan a writing addressed to W. L. Swiger, who, with his wife, had made the deed of trust to secure a note made by them to McMillan saying that he (Bates) had arranged to settle and pay the debt amounting to one hundred and six dollars and eighty three cents, and that the deed of trust need not interfere with any trade between them. This writing was exhibited to the parties on the occasion when Bates offered the money and demanded a deed. Later on the parties met again, when a deed was offered to Bates, and he objected to it for two reasons—one, that its boundary included some land of a third party, and because of indefiniteness of description; the second, because it reserved "unto said Elizabeth Swiger and Wm. L. Swiger their life estate, support, and maintenance in and on said land," whereas the contract between Charlotte A. Swiger and Bates called for a general warranty, making no provision for such reservation of a life estate. The reason given for refusal to make an absolute conveyance was that such reservation existed in favor of her father and mother, and they would not join in the deed.

In a day or two afterwards Charlotte A. Swiger sold this same land to H. L. Swiger; and she and her father and mother joined in a deed conveying it to him for the consideration of

one thousand dollars, of which one hundred and seven dollars is recited as paid down, and the residue payable in deferred installments, reserving no life estate or maintenance.

Then Bates brought a suit in the Circuit Court of Doddridge county to specifically enforce the contract between him and Charlotte A. Swiger; to set aside the conveyance to H. L. Swiger, as made with notice on his part of Bates' purchase, and therefore fraudulent; and to declare that the life maintenance reserved in the conveyance to Charlotte A. Swiger in favor of William L. and Elizabeth Swiger was not valid, or longer valid, against Bates, because he (Bates) did not know of any such reservation in said deed, as he lived distant from the office in which it was recorded, and William L. Swiger and Elizabeth Swiger had represented and declared to him at the time when he entered into said contract that they had no interest in the land, but that Charlotte A. Swiger owned it all, absolutely, and that they had aided in and consented to her making the sale, and he relied on and believed those representations.

The court entered a decree that in its opinion, Charlotte A. Swiger could not make a deed in accordance with her contract, but that plaintiff was entitled to specific performance, so far as she was able to perform, and putting Bates to an election whether he would accept a conveyance of such title as she was able to make. At the next term the court entered a decree from which it appears that Bates refused to take only such deed as she could make, and elected to take a deed in fee, with covenant of general warranty, without any reservation or incumbrance, save a lien for unpaid purchase money; and the court thereupon went on to decree that the plaintiff have specific execution of the contract, and that William L. Swiger had forfeited and estopped himself from making any claim for life maintenance upon said land, but that Elizabeth Swiger had not done so, and reserving her life maintenance, without prejudice from the decree, and annulling, as fraudulent, the deed made by Charlotte A. Swiger, William L. Swiger and Elizabeth Swiger to H. L. Swiger, and that Charlotte A. Swiger execute to Bates a deed, with general warranty, for the land, without

reservation or incumbrance, save a lien for unpaid purchase money, and that Bates execute notes therefor, and pay Mc-Millan his debt. Charlotte A., H. L., Elizabeth and William L. Swiger unite in an appeal from said decree. Squire Bates cross-assigns certain errors to his prejudice.

*First*, it is said, against the decree, that it is inconsistent with the first one. That is not material. A court ought to be allowed to change its mind before final decree. The first was a mere expression of opinion, but preparatory to a further decree; it decreed nothing. An interlocutory decree may be set aside before the final decree. *Morgan* v. *Railroad Co.*, 39 W. Va. 19 (19 S. E. Rep. 588). But this was no decree.

Now, take the case as to Charlotte A. Swiger. She made a plain contract entitling Bates to a clear conveyance, with general warranty; and the deed which she wished Bates to accept was not a compliance, because it reserved a life estate in favor of William L. and Elizabeth Swiger. Indeed, under the reservation in that deed, she created, as I think, a more serious and hurtful encumbrance to her vendee than that contained in the deed from her father and mother to her, as that gave them only maintenance, not a right to possession, whereas her deed to Bates called for a life estate in the land, calling for possession, but in any view an encumbrance detracting seriously and substantially from the value of Bates' estate in the land. The decree of specific execution, as against her (Charlotte A. Swiger) is one but as a matter of course under equity principles of specific performance, as expounded in *Abbott* v. *L'Hommedieu*, 10 W. Va. 677, unless there be impediment, either because of her conveyance to H. L. Swiger, or because there was a life maintenance charged on the land in favor of her father and mother, which bound her estate, and which might involve her in trouble from action for breach of warranty .

As to the impediment from her conveyance of the fee to H. L. Swiger: If he were a purchaser for value, without notice, no decree of specific performance could go against Charlotte A. Swiger, for she would have no land to convey, and would be utterly disabled from conveying, by reason of

the valid estate in H. L. Swiger; and the decree would be abortive, and the plaintiff could get relief only by an action for damages on the violated contract. Wat. Spec. Perf. § 125; Pom. Spec. Perf. §§ 294, 461, 462. But H. L. Swiger was not a complete purchaser, not having paid purchase money; and, moreover, it is plain and clear from the evidence that when he purchased he knew, as he admits, of the sale to Bates. He says he was informed that Bates had refused to accept a deed—the insufficient deed above referred to. He was bound to inquire of Bates as to his rights. Bates did nothing to mislead him. If he depended on misinformation, he assumed the risk and hazard. The truth is, his conduct is entirely reprehensible, as he wanted to buy the land himself, and sought the merest pretext for doing so, in violation of Bates' rights; and no one reading the evidence can hesitate to say that the finding upon it by the Circuit Court judge, that his purchase was fraudulent and void, is correct.

Next, did the existence of the life-maintenance charge on the land in favor of her father and mother forbid a decree against her compelling her into a general warranty, which might subject her to liability for its breach? Here an argument is made that this charge or reservation in the deed to Charlotte A. Swiger for life maintenance is too general, unliquidated and indefinite, and is therefore no charge, or void; and this contention is based on *Bradley* v. *Catron*, 8 Leigh. 522. But I do not concur in this contention. That case does say that an agreement between vendor and vendee that the vendee support vendor during life, and two daughters until they married, constituted no lien; but there was no reservation or charge in the deed, and it was in the days of implied lien, and, if any lien, it was an implied one. And Judge Tucker said the doctrine of secret, implied liens had been carried too far already, to the ruin of innocent purchasers, and that it ought not to be extended to a case where the amount of the charge was indefinite, extending through several lives, and would justify such liens in favor of several generations, so that purchasers could not know the amount, even if they knew of the fact of the charge. But here is an express charge, on the face of the deed, and, while indefinite

in amount, is ascertainable; and a purchaser could and would be bound to know of it, as it is in the chain of his title. A similar charge contained in a deed was supported in *Pownal* v. *Taylor*, 10 Leigh 172. Still, though a valid charge, it was no bar to a decree of specific performance. It was not a total absence of estate in Charlotte Swiger, but only a charge for a small part of the duration of the fee—a partial disability—and might not ever be enforced. She, with knowledge of it, warranted against it, by her contract; and she can not declaim against a liability under her self-imposed warranty, if the purchaser is willing to take it. It may be, he could ask performance, with compensation by abatement from purchase-money; but certainly the vendor can not complain that Bates elects to accept, and rest on his warranty. Pom. Spec. Perf. § 438; Wat. Spec. Perf. §§ 130, 203. And this impediment was still further diminished by the denial of any right in William L. Swiger to claim anything for his maintenance. The decree would forever bar him.

As to H. L. Swiger: I have said enough touching his case above.

As to William L. Swiger: The evidence is abundant to justify the decree declaring that he had no further right to maintenance under the deed from his wife and himself to Charlotte A. Swiger. He induced Bates to make the contract with his daughter. He was present at the drafting of the contract (she being absent) participated in it, fixed terms, and when it was proposed to draw it in his name, as the seller, the other party and the scrivener supposing he owned the land, he said, "No;" that he had no interest in the land, but it was his daughter's—and went along with Bates' son to Bates', where she was working, young Bates taking the contract for his father, to have her sign it, and with the twenty dollars cash, and she signed it. In every way he showed his assent. He never mentioned his interest or maintenance, but let his neighbor go on and buy, and pay money—he silent as to his right. This silence alone estops him, as an estoppel in *pais*, called "equitable estoppel." 1 Bigelow Estop. 544. But he affirmatively and expressly de-

clared that he had no interest, but that his daughter was absolute owner. This, of course, would estop his claim. See doctrine of estoppel stated in *Mason* v. *Bridge Co.*, 28 W. Va., on page 649; *Stone* v. *Tyree*, 30 W. Va. 687 (5 S. E. Rep. 878) *Railroad Co.* v. *Perdue* (this term) 21 S. E. Rep. 755.

An estoppel in *pais* operates where a person has made an admission or done an act with intent to influence the conduct of another, or that he has reason to believe will influence his conduct, inconsistent with the evidence he proposes now, or with the claim or title he proposes to set up, where the other party has been influenced by and has acted upon it, and where he would be prejudiced by the allowance of the claim or title set up. Pom. Eq. Jur. § 804; *Cowles* v. *Bacon*, 56 Am. Dec. 371; *Drew* v. *Kimball*, 80 Am. Dec. 163; *Iron Co.* v. *Trout*, 83 Va. 397 (2 S. E. Rep. 713).

William L. Swiger could not even stand by, silent as to his interest in the land, and see this contract made, and money paid under it to his daughter, and know that money would be paid to McMillan, and indeed take the active agency for his daughter in the sale, and then set up his claim. Where one has the legal title to land, acquiesces in its sale by a person under claim of title and moreover advises and encourages the parties to carry out such sale, he will be estopped from asserting his title against the purchaser. Bigelow, Estop. 544; Pom. Eq. Jur. § 818; *Maple* v. *Kussart*, 91 Am. Dec. 214; *Titus* v. *Morse*, 63 Am. Dec. 665; *Stebbins* v. *Bruce*, 80 Va. 389.

In *Stone* v. *Tyree*, 30 W. Va. 687 (5 S. E. Rep. 878) it is held that one who has title to land, and stands silent by, and allows an innocent man to purchase from one claiming authority to sell, is estopped from claiming the land against the purchaser, on the ground that the seller had no authority; and so far did the case carry this doctrine that it held that a court of equity would compel him to convey to the innocent purchaser.

It can not be said that Bates ought to have examined the record to see if the title was clear, and not have relied on Swiger's declaration or silence; but, in view of those declarations—even silence alone—he need not go to the record.

The declarations misled, and dispensed with inquiry; and mere silence, under the circumstances, will estop W. L. Swiger, regardless of any record examination. *Stone* v. *Tyree,* 30 W. Va. 704 (5 S. E. Rep. 878).

As to Elizabeth Swiger: The evidence of any conduct on her part to bar her further claim to life maintenance is not nearly so strong as that against her husband. 'She was not present at the execution of the contract, and did not, prior to its close, make declarations that she had no interest, and that her daughter had the absolute estate. She was not present, and silent, prior to the contract, when she should speak, unless we say it was at her house, after the contract was drawn up, and in the hands of Bates' son, to take it up to Charlotte to have it signed. She then and elsewhere expressed assent to the sale, but there is conflict of evidence as to what she there said between her and her husband and young Bates.

Mere declarations of satisfaction with the sale afterwards will not create this estoppel. Besides, several Virginia cases hold that participation of a wife in the fraud of the husband will not impair her rights. *Taylor* v. *Moore*, 2 Rand. (Va.) 563; *Penn* v. *Whitehead*, 17 Gratt., on page 512.

William L. and Elizabeth Swiger say they never intended to let Bates have their rights. They did at the time, but changed their minds to get a better price. They estimated their life maintenance at much more than one hundred dollars, and, if they did not intend to let Bates have the land unincumbered, it is strange that in a day or so they sold their interest, with the fee, for only one hundred dollars more, to a nephew, unless it was a shift to keep Bates from having the land, and retain it for themselves. But, to debar her, we must find conduct before the sale, in its negotiation, on her part, misleading, or ignoring her right, so as to make an equitable estoppel against her; and we can not sustain the appellee's cross-assignment, and reverse the Circuit judge on a question of fact, on the evidence.

Then it is argued that as Elizabeth Swiger's interest was left still in her, the deed from her and others to H. L. Swiger passed that interest and ought not to have been wholly set

aside. Of course, as it conveyed, with general warranty, the land, she would be hindered from claiming maintenance had the deed stood, and it would be merged; but it did not pass the maintenance separately, as that is a merely personal right of hers. I do not think there is fault in the decree in wholly annulling the deed, as there would be under such cases as *Love* v. *Tinsley*, 32 W. Va. 25 (9 S. E. Rep. 44) in case of deeds fraudulent as to creditors, as in them, if the debt be paid, the vendee retains the land, as it was only subject to the incumbrance of debt; but, in case of conveyance to a purchaser with notice, the very title to the land must be passed to the first purchaser. My opinion is that in such a case as this—a suit to enforce performance of an executory contract, where the vendor has passed title to a second purchaser, with notice—the proper decree is to direct a conveyance by the vendor with such warranty as he stipulated, and from the second purchaser without warranty, in one or separate deeds. As the legal title passed, a conveyance from the second purchaser would be sufficient to give the first one such title; but you want the warranty of the first, and the estoppel created by it. Thus you follow up the legal title, certainly divesting the second purchaser of it, and vesting it in the first, and avoiding all questions as to the whereabouts of the legal title in case of a decree directing a deed from the seller, and annulling the second deed as to the first purchaser. Where the second deed is wholly avoided, as in this case, it revests the title in its grantor; and likely so, too, in the case of such partial annullment, when taken in connection with record. The decree will be modified so as not to prejudice any rights that may exist between the grantors and grantee in that deed.

A point made against the decree is that it requires Bates to pay McMillan his debt, whereas H. L. Swiger had already paid it, and Bates ought to have been required to pay it to H. L. Swiger. Though it was not an officious payment, as to Swiger's grantors, yet it was such as to Bates, and is no ground of action against him. *Crumlish's Adm'r* v. *Improvement Co.*, 38 W. Va. 390 (18 S. E. Rep. 456). A stranger can not be subrogated to a lien. *McNeil* v. *Miller*, 29 W. Va. 480 (2 S. E. Rep. 335).

But a still more serious bar lies in the way of H. L. Swiger to subrogation to the McMillan lien. Subrogation is purely the creature of a court of equity, is not a matter of contractual character, and is administered just as equity deems proper, consistently with its principles, to further justice. One who asks relief, by way of subrogation or otherwise, in a court of equity, must, under one of its most fixed rules, come with clean hands, guilty of no fraud. But H. L. Swiger with eyes open to Bates' rights, sought to wrong him out of his prior right to the land; and this payment is one of the very acts done by him, in collusion with the other parties, to effectuate that purpose. His grantors wanted one hundred dollars more for the property than they had agreed to take. Moved by this design, probably at the instigation of some third party, they had recourse to this sale to H. L. Swiger. If not this, it was a mere covert, sham sale, to keep Bates from getting the land under his purchase, and there is some show of this; and, if so, it is worse for H. L. Swiger, making him only an instrument for the accomplishment of the wrong. In either aspect it was a wrong, odious to a court of equity. Justice Bradley said in *Railroad Co.* v. *Soutter*, 13 Wall., on page 523: "Was it ever known that a fraudulent purchaser of property, when deprived of its possession could recover for his repairs or improvements, or for incumbrances lifted by him? If such a case can be found in the books, we have not been referred to it. Whatever a man does to benefit an estate under such circumstances, he does in his own wrong. * * * One of the maxims of the latter system (English equity) is, 'He that hath committed iniquity shall not have equity.' Subrogation will not be applied to relieve a vendee from the consequences of his own wrongful act, or of a wrongful act in which he had participated, or of the wrongful act of one under whom he claims." Sheld. Subr. § 44.

The decree was one of the specific performance of the contract, and followed it in decreeing payment to McMillan by Bates. What remedy H. L. Swiger may have, it is not proper to say. If, as Lord Coke says, he has no remedy, it is the case of the woodcock caught in his own springe. The plaintiff, it is said, had not paid the McMillan debt. He had

arranged it and McMillan looked no longer to the debtors, but took Bates and the land. All this he did before he asked a deed. No objection was made on that score. Bates showed himself prompt and eager to execute the contract, and the defendant Charlotte A. Swiger, a young girl, who had derived title from her parents, to frustrate the enforcement of a liability feared by the father and mother, took every means suggested by her father, and probably by some one else, to defeat a plain and just right of Bates, whose conduct in the matter seems not open to any wrong or impropriety.

The decree is affirmed without prejudice to the rights or H. L. Swiger, as against Charlotte A. Swiger, William L. Swiger, or Elizabeth Swiger, growing out of their deed to him dated 1st day of November, 1892.