# CHARLESTON.

## McNEIL *v.* MILLER *et al.*

Submitted January 25, 1887.—Decided March 26, 1887.

1. SUBROGATION.

   The doctrine of subrogation, being the creation of courts of equity, is so administered as to secure essential justice, without regard to form, and is independent of any contractual relation between the parties to be affected by it.  (p. 483.)

2. SUBROGATION—HOW APPLIED.

   It is not applied in favor of one who has officiously and as a mere volunteer paid the debt of another, for which neither he nor his property was answerable; but it will be applied, whenever the person claiming its benefit has paid a debt, for which another was primarily answerable, and which he was compelled to pay in order to protect his own rights or save his own property.  (p. 483.)

3. SUBROGATION—JUDGMENT-LIEN—RENTS AND PROFITS.

   By written contract A became the purchaser of a tract of land from B. At the time of the purchase the land was subject to a vendor's lien in favor of C, which A with the consent of B paid off out of the purchase-money due from him. After the sale, but before A had his contract of purchase recorded, D obtained a judgment against B, and by suit sought to subject the land to the payment of his judgment. HELD :

   1. As against the judgment of D A is entitled to be subrogated to the rights of C, and D is only entitled to have his judgment satisfied out of the proceeds of the sale of the land, after A has been repaid the amount of the vendor's lien paid by him to C with its interest.  (p. 484.)

II. In such case D has no right to call upon A for an account of rents and profits during the time he has held the land under his purchase. (p. 486.)

*R. S. Turk* for appellants.

*R. T. Dennis* for appellee.

Snyder, Judge:

Appeal from a decree of the Circuit Court of Pocahontas county entered June 24, 1886, in the suit of *William L. McNeil* against *Robert G. Miller and others*. The facts bearing upon the question presented by this appeal are few and undisputed. They are as follows: James H. Renick purchased a tract of 106 acres of land in Pocahontas county from John C. Woodson. Before paying the purchase-money, Renick sold, and by deed, dated January 4, 1862, conveyed the land to Robert G. Miller, retaining a lien in the deed to secure the payment of the purchase-money due to Woodson, Miller having agreed to pay said purchase-money as the consideration of the sale and conveyance to him by Renick. This deed was duly recorded in said county. Miller was placed in possession of the land and paid a portion of said purchase-money. By written contract dated June 26, 1873, Miller sold the land to Lanty Lockridge, who was at the same time put into possession and so continued thereafter. This contract of sale was never recorded. In 1881, Miller conveyed the land to Lockridge by deed, which was duly recorded February 12, 1883, in said county.

At the time of the sale by Miller to Lockridge, Miller still owed a large portion of the purchase-money to Woodson, for which the vendor's lien had been retained as aforesaid. This fact coming to the knowledge of Lockridge he insisted upon the right to apply so much of the purchase-money due from him to Miller as might be necessary to the payment of the said vendor's lien. To this Miller assented and by a verbal arrangement then made it was agreed between Miller and Lockridge, that the latter should pay off the lien due to or retained in favor of Woodson and that he should have credit for the sum so paid on the purchase-money which he had contracted to pay Miller. In pursuance of this agreement Lockridge paid off the whole of said vendor's

lien as well as some judgments against Miller operating as liens on the land at the date of the purchase.

Between the date of the purchase by Lockridge in 1873 and the date of the recordation of the deed, in February, 1883, from Miller to him, C. C. Francisco and other creditors of Miller obtained judgments for an amount exceeding the value of the land against Miller; and they caused all of these judgments to be duly docketed in Pocahontas county prior to the recordation of said deed in February, 1883. The only controversy in the court below was whether or not, upon this state of facts, Lockridge as against said judgment-creditors was entitled to the benefit of the liens so paid off by him. The Circuit Court held that he was so entitled, and the said judgment-creditors have appealed to this Court.

It is contended for the appellants, that inasmuch as it was a part of the contract of purchase, that Lockridge should pay off the vendor's lien in favor of Woodson, his payment of the same in pursuance of said contract was, in effect, the same as if he had paid the money to Miller and Miller had used the same to pay the said lien; and that if such had been the form of the transaction, then, under no rule or principle of law or equity, could Lockridge by subrogation or otherwise be entitled to the benefit of said discharged vendor's lien.

On the other hand, it is insisted for the appellee, that Lockridge as the purchaser of the land had the right to discharge the existing liens on the land out of the purchase-money due from him; and whether such payment was made, either with or without any agreement, he was entitled to be subrogated to rights of the lien creditor as against all subsequent encumbrances upon the land.

It is plain, if Lockridge is not in a position to be substituted to the vendor's lien, then, the appellants, the judgment-creditors of Miller, are entitled to have the land subjected to the satisfaction of their judgments, notwithstanding the fact that Lockridge was the owner of the land and had paid all the purchase-money before their judgments were recovered. The contract under which he purchased and held the land was, under our statute, absolutely void as to such creditors until it had been duly recorded, or until he had obtained his deed and had it duly recorded. (Sec. 5, ch. 74 of

Code; *Anderson* v. *Nagle*, 12 W. Va. 99; *Eidson* v. *Huff*, 29 Gratt. 347.)

The only question, therefore, is as to the right of Lockridge to be subrogated to the paramount lien paid off by him. Is he under the circumstances in this case entitled to such rights? This question it seems to me is entirely free from doubt. The doctrine of subrogation is derived from the civil law and has been adopted by our courts of equity. It is treated as a creature of equity, and administered so as to secure real and essential justice without regard to form, and is independent of any contractual relations between the parties to be affected by it. It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter; but it is not to be applied in favor of one who has officiously and as a mere volunteer, paid the debt of another, for which neither he nor his property was answerable, and which he was under no obligation to pay; and it is not allowed where it would work any injustice to the rights of others. (*Clevinger* v. *Miller*, 27 Gratt. 740; *Enders* v. *Brune*, 4 Rand. 438; *Lewis* v. *Palmer*, 28 N. Y. 271; Sheldon on Sub. §§ 1, 2, 3, and cases cited.

Subrogation, as a matter of right, independently of contract, takes place for the benefit of a purchaser who has extinguished an incumbrance upon the estate which he has purchased. (*Armentrout* v. *Gibbons*, 30 Gratt. 632. It will be applied whenever the person claiming its benefit has been compelled to pay the debt of a third person in order to protect his own rights or save his own property. (*Cole* v. *Malcolm*, 66 N. Y. 363; *McClaskey* v. *O'Brien*, 16 W. Va. 791.

A sale ordinarily implies, that the vendee shall have a clear and unincumbered title; and unless it is otherwise agreed, a mortgage, judgment or other encumbrance should be discharged by the vendor. In such case the vendor is primarily liable for the encumbrance, and if he fails to discharge it and the vendee is compelled to satisfy it in order to protect the property, he will be subrogated to the encumbrance so paid off by him. The rule is stated and illustrated

by an application to the facts in the case of *Gatewood* v. *Gatewood*, 75 Va. 407, thus: "Where the party making the payment occupies the position of surety for the debt, or is in some way personally bound for its payment, such person may, in equity, require an assignment or transfer not only of the mortgage itself, but of all the securities held by the creditor for his protection and indemnity; and although no such assignment or transfer is actually made, a court of equity will treat it as done."

In the case at bar, the written contract of 1873 from Miller to Lockridge provides, that Lockridge shall pay the purchase-money to Miller, and it contains no stipulation in reference to the discharge of the liens then resting upon the land. The implication is therefore clear, that Lockridge was by the contract of sale entitled to an unincumbered title. The verbal agreement then or afterwards made between the parties, that Lockridge should apply so much as might be necessary of the purchase-money due from him to the payment of the vendor's lien in favor of Woodson, did not in any manner change or affect the rights of Lockridge. According to the principles before stated he had the legal right to make such application in order to relieve the land and protect himself. If he had done so without the consent of Miller and without an assignment of the lien, he would in a court of equity be substituted to all the rights of the lien-creditor and be entitled to the same relief as he would if he had taken an assignment of the lien from the creditor. *Hinds* v. *Ballou*, 44 N. H. 619; *Janness* v. *Robinson*, 10 N. H. 219. The new fact, then, that Miller agreed or consented, that Lockridge might do what he had the legal right to do without such agreement or consent, could in no manner prejudice his rights. Nor could it have affected the rights of Lockridge if it had been a part of the contract of purchase, that he was to use part of the purchase-money to pay off the incumbrances resting upon the land. He would in either case be entitled to be subrogated to the rights or securities of the creditors holding said liens so far as the same might be necessary to protect the title to his land. Lockridge was in no sense acting officiously or as a volunteer in paying off said paramount liens. He had not only the consent of Miller

to do so, but he was bound to do so to relieve his land.   As to these liens his land stood as security for their payment.   The payment by him, under the circumstances, clearly entitled him to the benefit of the liens as against his vendor or any subsequent lienor.

The counsel for the appellants relies with much apparent confidence on the decision of this Court in *Bier* v. *Smith,* 25 W. Va. 830.   I think that case has been wholly misunderstood.   The facts on which that decision is based are as follows : J. E. Smith purchased a tract of land of Parker and executed a trust-deed thereon to secure the payment of the purchase-money.   He then sold a part of said land to G. L. Smith at the same price per acre he agreed to pay Parker; and G. L. Smith was to pay Parker and when he paid Parker such payment was to be credited on the trust-debt due from J. E. Smith to Parker.   Under this agreement G. L. Smith paid Parker about $500.00, leaving a large part of the purchase-money due from him still unpaid.   G. L. Smith then died and his personal representatives brought a suit in equity against J. E. Smith to set aside said sale and recover from him the $500.00 paid to Parker by G. L. Smith in his lifetime.   This Court held *first*, that, if the plaintiff was entitled to recover from J. E. Smith the purchase-money paid by G. L. Smith, he had a complete remedy at law, and that equity had no jurisdiction; and *second*, if the plaintiff desired a specific execution of the contract of purchase, then the heirs of G. L. Smith should have sued and not his administrator.   Then in commenting on the case as made by the answer of J. E. Smith, this Court, said that, by the agreement between the two Smiths, G. L. Smith was to stand in the shoes of J. E. Smith and was to pay to Parker the notes of J. E. Smith as they fell due.   The effect of this agreement was to make G. L. Smith primarily liable on the Parker notes and J. E. Smith liable simply as his surety. In this view of the case this Court very properly held that G. L. Smith as against J. E. Smith, his surety, was not entitled to be subrogated to the rights of Parker in the trustdeed.   In that case the controversy was not between the creditors of the vendor and the purchaser as it is in the case at bar, but the controversy was between the vendor and

the purchaser. To make the case now before us analogous to that case we would have to assume that Lockridge was endeavoring to rescind the contract of sale between him and Miller, and instead of paying the purchase-money to Miller was asking the court to subrogate him to the rights of the holder of the vendor's lien as against Miller after he had paid off that lien by agreement between him and Miller. The controversy in the two cases is very different and the relation of the parties the converse of each other; consequently, the principles involved in the one have no application to the other. I am therefore of opinion there is no error in the decree to the prejudice of the appellants.

But there is an error in said decree of June 24, 1886, to the prejudice of the appellee, Lockridge. That decree among other matters directs the commissioner to charge Lockridge with rents and profits and credit him with improvements and taxes during the time he has been in possession under his purchase from Miller. This is wholly unwarranted by the facts and the law in this case. Lockridge as the owner of the land was entitled to use and occupy it, and has the right to continue to do so until it is sold or sequestered by creditors having liens thereon. The appellants do not pretend to own the land; they are merely creditors claiming liens which they are seeking to enforce against the land. This is not a controversy between two adverse claimants of the land under different titles, and it is therefore not a case in which the owner or party in possession can be called upon to account for rents and profits.

Therefore so much of the said decree as directs the commissioner to report the rents and profits and the value of the improvements and taxes must be set aside and annulled; but in all other respects said decree must be affirmed.

Affirmed.