# CHARLESTON.

## NELSON *v.* PHARES.

### (*GREEN, JUDGE, Absent.)

Submitted September 5, 1889.---Decided November 20, 1889.

1. INJUNCTION—RECISSION OF CONTRACT.

By an executory agreement providing for conveyance with general warranty, P. sells a tract of 550 acres of land to N., and N. sells P. eighty seven acres in part payment ·therefor, and gives his five bonds for deferred payments. Afterwards, N. sells P. a tract of 274 acres of land in further payment. The parties take possession under these sales. When P. sold N. the 550-acre tract, it was under a lien or liens binding it in P.'s hands, and it was sold under a decree therefor ; the purchase-money in N.'s hands not being sufficient to remove the incumbrance, and a large part of it not due when the land was decreed, and when sold. On one of the purchase-money bonds P. obtains judgment against ·N., and N. brings a chancery suit enjoining the judgment, and praying that it be perpetually enjoined, and the contracts and bonds given by him rescinded and annulled. P. filed an answer, claiming specific execution by decreeing him the difference between the price N. was to pay him for the 550 acres, or, if that relief could not be given, then rents and profits and waste to the 550 acres ; and N. claimed damages for failure to convey. The decree dissolved the injunction and dismissed the bill, without ordering an account between the parties, or rescinding the contracts or bonds. *Held,* such decree is erroneous.

2. INJUNCTION---RECISSION OF CONTRACT.

The court, before dissolving the injunction, by reference to a commissioner or by a jury, if any one asked a jury, should have ascertained what P. was entitled to for rents and profits and waste, and what rents and profits, and compensation for failure to convey, N. was entitled to ; and, if any sum should thus be found due P., a decree should have been entered holding the judgment firm as a security for such amount, and dissolving it

---

*On account of illness.

as to any excess ; and should have rescinded the two contracts between the parties, and cancelled, and directed, the surrender of N.'s bonds.

*G. A. Blakemore* for appellant.

*Flick & Westenhaver* for appellees.

BRANNON, JUDGE:

By an agreement made on the 13th of March, 1876, between Robert Phares and Sol. K. Nelson, Phares sold Nelson a farm of 550 acres in Pendleton county, at the price of $7,000.00, in payments as follows : $2,500.00 on May 15, 1876, $500.00 of which was to be in a lot in Circleville, of eighty seven acres, with a provision that if Nelson should fail to pay more than $500.00 of the $2,500.00, besides said lot, on or after May 15, 1876, Nelson should have until November 15, 1876, to pay the residue of the $2,500.00 ; that is, $1,500.00 by paying interest until the 15th of November. The residue, $4,500.00, was to be paid in four equal annual payments, on November 15, 1877, 1878, 1879, and 1880. The agreement provided that Nelson should have working possession from date of agreement, and full possession May 15, 1876, except wheat-fields. Phares was to make a deed, with general warranty, on November 15, 1876, or before, if the first payment should be fully paid. Nelson was to convey the eighty seven acres, with general warranty, to Phares as soon as demanded, on or after May 15, 1876. Afterwards, on the 13th of June, 1876, Phares and Nelson entered into a second agreement, whereby Nelson sold Phares a tract of 274 acres at $2,800.00, in four payments as follows : $1,000.00 to be credited on said $2,500.00 for the said farm sold by Phares to Nelson, and the residue, $1,800.00, in payments of $450.00, to be credited on the four deferred payments, to apply on the 15th of November, 1877, 1878, 1879, and 1880. Nelson was to convey the 274 acres, with general warranty, when asked.

On September 22, 1876, Nelson gaves Phares his bond for $1,000.00, which, with $1,000.00 credited on account of the 274 acres, and $500.00 on account of the eighty seven acres, made up the first payment of $2,500.00 on the tract of 550 acres. Phares sued, and obtained judgment against

Nelson on this bond in October, 1877; sued out execution; and Nelson filed his bill in the Circuit Court of Pendleton in April, 1878, to enjoin its enforcement, and obtained an injunction.

The bill of Nelson alleged that Phares had title to the farm sold Nelson under a deed made December 5, 1870, by Robert Phares, Sr., to Robert Phares, Jr., which conveyed the farm for $4,000.00 consideration, but contained a clause that it was to be understood that "the land stands bound for the deferred payment of seven thousand dollars, which payment is to be made October 1, 1877, to be paid to Abijah Phares, Catherine Phares, Sarah Phares, Margaret Phares, and Susan Phares, daughters of Robert Phares, Sr., as his will might direct; that said Robert Phares, Sr., died in 1874, leaving a will which provided that said $7,000.00, charged by said deed on said land, should be paid by his son Robert on the 1st of October, 1877, to Susan Woods, Catherine Phares, Margaret Fraley, Abigall Mullinax, and Sarah Phares; that said legacies were unpaid and overdue, and Robert Phares was worth but little; and that he had already paid $3,300.00, and if he paid said judgment he would do so with great risk; and claimed that before paying more Phares should remove the liens.

The bill further stated that a suit was pending in said court, brought by William B. Compton, commissioner, against the heirs and devisees of Robert Phares, Sr., setting up a claim against his estate of between $3,000.00 and $4,000.00; that his personal estate was but little, and had been disposed of, and was beyond the reach of said debt; and that, if said suit should be determined against the estate, the land he purchased of Robert Phares, Jr., would be resorted to, to pay whatever amount Compton would recover.

In 1881, Nelson filed an amended and supplemental bill, alleging that since the filing of his original bill William B. Compton, commissioner, in October, 1878, obtained a decree in said suit against Phares for $1,560.00, with interest from July 27, 1878; and that other parties recover of Robert Phares, Jr., $5,206.59, with interest; and that said moneys were liens on the land sold by Phares to him prior to

the date of the sale by Phares to him by said agreement, and decreed that it be sold; and that under said decree it had been sold from Nelson at $5,605.00, and the sale confirmed in April, 1879, and the purchaser put in possession; that the proceeds of sale would not pay the debts; that said Phares made no defence to said Compton's suit, and allowed all the claims to be asserted against the land without effort to resist them.

This amended bill prayed that as Nelson had been compelled to give up possession, and could obtain no benefit from his contract because of Phares' failure to comply with it, and it was then impossible to do so, the agreements and contracts between him, Nelson, and Phares concerning said land be cancelled and annulled; that all bond sexecuted to Phares under said sale be cancelled and surrendered, and said judgment enjoined; and for general relief.

Afterwards, Phares filed his answer, alleging that he never took possession of said eighty seven acres, but that Nelson had abrogated the contract, and taken and held possession as his own; that the contract for the sale of the 274 acres by Nelson to Phares had been annulled, and Nelson had taken possession of it; and that Nelson took possession of the 550 acres in March, 1876, and held it until May, 1879, and greatly damaged it, and caused it to sell for $1,500.00 less therefrom. The answer claimed that Nelson be compelled to pay Phares the difference between the $7,000.00 which Nelson had agreed to pay for the farm and $5,605.00, for which it was sold under the decree of Compton; and, if that should not be done, that Nelson be held to account for rent at $350.00 per annum, and that said $1,000.00 judgment stand as security therefor. He alleged that Nelson failed to comply with his contract, and thus disabled him from lifting the liens.

Depositions are taken. On the 4th of November, 1886, a decree was pronounced dissolving the injunction and dismissing the bills, and from this decree Nelson appeals. Nelson filed a special replication resisting the relief asked by the answer, and alleging that by reason of Phares' failure to convey he had sustained damages to the amount of $1.500.00; and denying that he had damaged the 550 acres; and denied

that the rents and profits were worth $350.00 per annum.

That the large lien of $7,000.00 charged by the deed and will of Robert Phares, Sr., on the land sold by Robert Phares, Jr., to Nelson existed, is beyond controversy. It was due October 1, 1877. Of the $7,000.00 which Nelson was to pay Phares for the land, he had paid, in land, $3,309.00. That, also, Compton's suit, claiming in addition to the lien charged by said deed and will, between $3,000.00 and $4,000.00, was pending, threatening said land seriously, until October, 1878, when a large debt, of $1,560.24, was decreed therein to Compton, and other debts of more than $5,000.00 against this land, is beyond controversy. The existence of these facts is not denied. Certainly, Nelson could not remove them; for, until the decree, he could not tell the amount which would be decreed against the land, and the balance owing from him was not enough to remove the liens, and some of it was not then due—part not due till November, 1878, another part November, 1879, and another part November, 1880. There was not enough coming from him to pay the amount at which it was sold at the judicial sale. He was powerless to do anything with the fund in his hand to relieve the land. Hence he was not bound to go on with his contract.

There is error in the decree complained of in two respects: (1) It was error to wholly dissolve the injunction. If it was on the theory that the rents and profits were equal to the amount of the judgment before dissolution, there should have been an account of rents and profits, improvements, taxes, and compensation for failure to convey. (2) It was impossible at the date of the decree to give specific performance, as the land had been sold away. There stood the contracts between the parties, giving Phares the two tracts Nelson had sold him as part payment for the land which Phares sold Nelson, and there stood a large purchase-money debt due from Nelson to Phares under this sale. The amended bill prayed for the rescission of these agreements, so as to give back Nelson the two tracts he had sold Phares, and relieve him of the danger and burden of the large debt; yet the decree denies this relief by dismissing his bills, thus precluding him from any right to his land or defence against said

debt. For this cause the decree complained of must be reversed.

A question arises whether we shall remand the cause for an account between the parties. Though this land was under large incumbrance and peril from the suit pending against it, and the contract of purchase could not be enforced against Nelson, but he might have elected to abandon the contract, yet he continued in possession; knowing all this, gave no notice of any intent to abandon it, and took the rents and profits, and apparently, by ill use, depreciated it. Shall he take the rents and profits, and pay nothing? That would seem to be highly unjust. If the inability of the vendor to convey good title had arisen from a better title outstanding in a stranger, there might be reason for saying that Nelson should not be held to account for rents and profits, but here the title was in Phares, but his title was subject to incumbrances which swept away the land. Now, creditors can not subject Nelson to the rents and profits. He is in no danger from them. *Leake* v. *Ferguson*, 2 Gratt. 420; *Mc-Neil* v. *Miller*, 29 W. Va. 480 (2 S. E. Rep. 335.)

Then, shall Nelson pay to no one? We think he should be held answerable to Phares. We think an account should be taken, to ascertain what Nelson should pay for the use of the land while in his possession—what damages he caused by waste, not by ordinary use; and against it, in favor of Nelson, what improvements, permanent in character, he made; what taxes he paid; and what damages he suffered from failure of Phares to execute his contract of sale; and what rents and profits, if any, Phares received from lands sold him by Nelson. And that, if any balance be found in favor of Phares, the judgment should be held as a security therefor; and, as to any balance of it beyond the sum found due Phares, the injunction should be perpetuated; and there should be a decree rescinding and annulling the two contracts so made between Phares and Nelson, and cancelling and surrendering to Nelson the remaining purchase-money bonds, and relieving Nelson therefrom. Until such decree, the injunction should stand.

The appellant, Nelson, by his amended bill, asks relief by rescission of the contracts and the annulment of his bonds,

and we think he properly asks it; but, asking equity, he must himself do equity. If a sum be found due from him, the judgment must stand as security therefor. *Knifong* v. *Hendricks*, 2 Gratt. 213. Having jurisdiction, equity should, to prevent multiplicity of suits, administer full relief. 1 Pom. Eq. Jur. § 237, note 3; 2 Story, Eq. Jur. § 798, note 1; *Jaynes* v. *Brock*, 10 Gratt. 211. A court of equity possesses facilities for ascertaining and settling the rights of the parties by reference to a commissioner or by directing an issue of *quantum damnificatus* to be tried by a jury, if any party asks it. 2 Story, Eq. §§ 795, 796; *McKinsey* v. *Squires*, 32 W. Va. 41 (9 S. E. Rep. 55.)

The decree is reversed, with costs to appellant, and the cause is remanded to the Circuit Court of Pendleton county for further proceedings according to the principles herein indicated, and, further, according to principles governing courts of equity.

REVERSED. REMANDED.