(June 12, 1899.)

## WILSON v. WILSON.

### [57 Pac. 708.]

NOTICE TO DISMISS APPEAL—SERVICE OF NOTICE OF APPEAL.—Admission of service of notice of appeal by one defendant within the time required by law for service of notice is equivalent to service.

SAME — VOLUNTARY APPEARANCE—JURISDICTION.—Admission of due service of notice of appeal is a waiver of irregular service, and when a party voluntarily appears in court he will be subject to the same jurisdiction as if brought in by regular process.

SAME—SERVICE OF STATEMENT.—Co-respondents cannot take advantage of failure of appellant to serve statement on motion for a new trial on one of their co-respondents, such co-respondent having failed to do so.

UNDERTAKING ON APPEAL.—When the clerk certifies that a sufficient undertaking on appeal in due form of law has been filed, the appeal will not be dismissed on motion, unless a certified copy of such undertaking is presented and it is thus shown that the undertaking is not in due form of law.

CERTIFICATE TO TRANSCRIPT.—Certificate of counsel for respective parties to transcript to the effect that the transcript is correct and contains all of the evidence, *held* sufficient.

ACKNOWLEDGMENT OF MARRIED WOMAN.—The acknowledgment of a married woman must be taken in substantial compliance with the provisions of section 2956 of the Revised Statutes.

DISPOSITION OF COMMUNITY PROPERTY.—Under the provisions of section 2505, the husband has the management and control of the community property, with like absolute power of disposition (other than testamentary), as he has of his separate property, but such power of disposition does not extend to the homestead or to that part of the common property occupied or used by the husband and wife as a residence.

SAME—SIGNATURE OF WIFE.—The wife's signature is not necessary to an instrument by which the husband conveys or encumbers that part of the community property of which he has absolute power of disposition.

FINDINGS.—The finding of facts must respond to all of the material issues.

PARTNERSHIP.—Held under facts of this case no partnership existed.

SUBROGATION.—When a person, being under obligation to do so, or is interested in so doing, pays the debts of another, he may be subrogated to all the rights, securities or remedies of the creditor whom he satisfies.

SAME.—When one voluntarily, and as a mere volunteer, having no interests to protect, pays the debts of another, the payment operates as an extinguishment of the claim and doctrine of subrogation does not apply.

(*Syllabus by the court.*)

APPEAL from District Court, Bear Lake County.

John A. Bagley and E. E. Chalmers, for Appellant.

The findings must cover all the material issues and settle the rights of parties. (*Bosquett v. Crane,* 51 Cal. 505; *Nephi Irr. Co. v. Jenkins,* 8 Utah, 369, 31 Pac. 986; *Potwin v. Blasher,* 9 Wash. 460, 27 Pac. 710; *Ernst v. Cummings,* 55 Cal. 179; *Carson v. Thews,* 2 Idaho, 176; 9 Pac. 605.) Plaintiff's payment was not a voluntary payment, and if not and his securities proved to be invalid, then he was entitled to be subrogated as prayed, having theretofore advanced two thousand two hundred and fifty pounds sterling for said business. (*Matzen v. Schaeffer,* 65 Cal. 81, 3 Pac. 92; *Hofman v. Demple,* 52 Kan. 756, 35 Pac. 803; *Everston v. Central Bank,* 33 Kan. 352, 6 Pac. 605; *Crippen v. Chappel* 35 Kan. 495, 57 Am. Rep. 187, 11 Pac. 453; *Yaple v. Stephens,* 36 Kan. 680, 14 Pac. 222; *Swift v. Kraemer,* 13 Cal. 526, 73 Am. Dec. 603; *Tolman v. Smith,* 85 Cal. 280, 24 Pac. 743; *Lewis v. Chittick,* 25 Fed. 176; *Citizens' Nat. Bank v. Wert,* 26 Fed. 294; *Equitable Mortgage Co. v. Lowry,* 55 Fed. 165; *Memphis etc. Co. v. Dow,* 120 U. S. 287, 7 Sup. Ct. Rep. 482; Wiltsie on Mortgage Foreclosure, sec. 344; *Patterson v. Birdsall,* 64 N. Y. 294, 21 Am. Rep. 609; Harris on Subrogation, sec. 14, p. 19, sec. 139, p. 102.) A mortgagee in possession by consent of the mortgagor is entitled to remain in possession and to receive the rents and profits until his debt is paid.

(1 Jones on Mortgages secs. 702, 703, 715-718; Wiltsie on Mortgage Foreclosure, sec. 677; *Spect v. Spect,* 88 Cal. 443, 22 Am. St. Rep. 318, 26 Pac. 203; *Edwards v. Wray,* 12 Fed. 42.) Upon a bill of exceptions containing all the evidence plaintiff moved for a new trial of said cause, and, his motion being denied, he duly excepted and appeals from said order assigning as error the denial of said motion. A party to an action is entitled to present on appeal the points, first, that the judgment is not a legal conclusion from the facts found; and second, that the evidence does not sustain the findings or some of them. (*Dowd v. Clarke,* 51 Cal. 262.) There never was a partnership of which plaintiff was a member actually existing or launched, but only an agreement to enter into the partnership relation. To constitute this relation the agreement between the parties must be an executed agreement. So long as it remains executory the partnership is inchoate, not having been called into being by the concerted action necessary under the partnership agreement. (*Meagher v. Reed,* 14 Colo. 335, 24 Pac. 681; *Baldwin v. Burrows,* 47 N. Y. 199; *Grooves v. Tollman,* 8 Nev. 178; *Powell v. Maguire,* 43 Cal. 11; *Stevenson v. Mathers,* 67 Ill. 125; *Martin v. Baird,* 175 Pa. St. 540, 34 Atl. 809.) The acknowledgment of Mrs. Elizabeth H. Wilson to the conveyance is conclusive of that fact as against plaintiff, who is an innocent grantee. (*Frieberg v. De Lamar,* 7 Tex. Civ. App. 263, 27 S. W. 151; *Mather v. Jarel,* 33 Fed. 366; 1 Devlin on Deeds, 530, 535; Jones on Mortgages, sec. 500; *Johnston v. Wallace,* 53 Miss. 331, 24 Am. Rep. 699; 2 Wharton on Evidence, 1052; *Pierce v. Feagans,* 39 Fed. 587; *Kerr v. Russell,* 69 Ill. 666, 18 Am. Rep. 634; *Young v. Duvall,* 109 U. S. 573, 3 Sup. Ct. Rep. 414; Browne on Parol Evidence, sec. 304.) Mrs. Wilson did by her letter make "some kind" of acknowledgment and cannot now impeach the certificate thereof. (*Banning v. Banning,* 80 Cal. 271, 13 Am. St. Rep. 156, 22 Pac. 210.)

S. C. Winters and R. S. Spence, for Respondents.

Where a mortgage is given on land owned in common by husband and wife, to secure the debts of the husband, a purchaser of the husband's interest in the land who pays off the mortgage

debts is not entitled to be subrogated to the mortgagee's rights as against the wife's interest in the land, since she was only a surety for the husband and was as effectually released by the payment of the debt by the purchaser, as if her husband, the principal debtor, had paid it. (*Zeller v. Henry,* 157 Pa. St. 1, 27 Atl. 559; *Cornwell v. Orton,* 126 Mo. 355, 27 S. W. 536; *Kleimann v. Gieselmann,* 114 Mo. 437, 35 Am. St. Rep. 761, 21 S. W. 796; *Bunn v. Lindsay,* 95 Mo. 250, 6 Am. St. Rep. 48, 7 S. W. 473.) And if the appellant paid the prior mortgages or trust deeds with the intent to extinguish them and did so satisfy them, and he got the kind of security he expected to get, he cannot be subrogated to the prior mortgage liens. (*Wentworth v. Tubbs,* 53 Minn. 388, 55 N. W. 543; *Wormer v. Waterloo Agricultural Works,* 62 Iowa, 699, 14 N. W. 331.)

SULLIVAN, J.—The amended complaint, on which this action was tried, demanded the foreclosure of two certain mortgages on real estate and a chattel mortgage. The real estate mortgages are deeds absolute on their face, one given on certain real estate known as the "Howdon ranch," situated in Bannock county, Idaho, and the other on what is known as the "Fish Haven ranch," situated in Bear Lake county, Idaho. The chattel mortgage is in the form of a bill of sale, and given on four hundred head of horned cattle, thirty-five head of horses, and a lot of farming implements and machinery, wagons, harness, furniture, and other personal property. The plaintiff also asked to be subrogated to the rights of certain other mortgagees whose mortgages, he alleges, he had paid, amounting to $15,000. It is also alleged that the deeds and bill of sale sued on herein were given in consideration of the payment of the mortgages last above referred to as belonging to certain other mortgagees, which payments were made under an agreement with the defendant and respondent, Charles B. Wilson. Plaintiff asks to be subrogated to the rights of G. C. Gray, whose mortgages he paid off on the second day of October, 1895, in the event the court finds that the deed, exhibit "C," was not acknowledged by Elizabeth H, as required by law. The defendant Charles B. Wilson failed to answer, and his default was entered. The defendants Mrs. Dryden, George Reay and Mrs. George Reay, answered, disclaiming,

any interest in the action or in the property in controversy. Defendants Elizabeth H. Wilson and Franc S. Brereton answered, denying the material allegations of the complaint, and, by way of affirmative defense, put in issue many material facts. The court tried the case without a jury, and filed its finding of facts and conclusions of law, and entered judgment of absolute dismissal against the plaintiff, dismissing his cause of action, and gave judgment against him for costs. A motion for a new trial was made, and denied by the court. The appeal is from the judgment and order denying a new trial.

A motion to dismiss the appeal was made by counsel for respondents Elizabeth H. Wilson and Franc S. Brereton, argued by respective counsel, and taken under advisement by the court, which we shall now proceed to decide.

The first ground of said motion is that the notice of appeal was not served upon Charles B. Wilson, the principal defendant. The transcript contains a stipulation in which said Wilson admits that the notice of appeal was served on him on January 12, 1899, the date on which the attorneys for the other respondents admitted service of said notice of appeal, and the date on which said notice was filed by the clerk of the trial court. We think said admission is equivalent to, and is an acceptance of, service of said notice of appeal, and was made within the time provided by law for such service, and gives this court jurisdiction of said respondent. It is a well-settled rule, when a party appears voluntarily in court, he will be subject to the same jurisdiction as if brought in by regular process or notice. (2 Am. & Eng. Ency. of Law, 233.) Admission of due service of notice is a waiver of irregular service, and, in general, any action which is equivalent to acknowledgment of notice waives any defects in such notice.

The second ground of said motion is to the effect that no notice of intention to move for a new trial was ever served on respondent Charles B. Wilson. The transcript contains the admission of said Wilson that he was duly served with the notice of intention to move for a new trial on the sixteenth day of March, 1898.

The third and sixth grounds of said motion, to wit, that no statement on motion for a new trial and no transcript on appeal

were ever served on defendant C. B. Wilson, are matters of which his codefendants cannot take advantage, and, Wilson having failed to do so, he has waived them.

The fifth ground of said motion is that no undertaking was ever filed, on either appeal, within five days after the service of the notice of appeal. The clerk of the trial court certifies that a sufficient undertaking on appeal, in due form of law, was filed in said cause on the twelfth day of January, 1899. As counsel for respondents have failed to present a copy of said undertaking to this court, we think the certificate is sufficient, under the rule of this court governing that matter.

The seventh ground of said motion is that the transcript is not certified as required by the rules of this court and by law. To the transcript is attached the certificate of the attorneys for appellant and respondents, to the effect that the transcript is correct, and contains all of the evidence in the case. Counsel for respondents, having thus certified that the transcript is correct, will not be heard to contradict such certificate, unless it is shown that the certificate was obtained by trick, fraud or deceit, and, as a matter of fact, that such transcript is not a true and correct transcript. No such showing has been made or attempted. The disposition of the first seven grounds of said motion disposes of the eighth ground thereof. The motion to dismiss is denied.

It appears from the record that said Charles B. Wilson and Elizabeth H. Wilson were husband and wife at the dates of the mortgages sought to be foreclosed; that in the spring of 1896 they separated, and on the seventh day of May, 1896, the latter brought an action for divorce, and on the seventeenth day of September, 1897, a divorce was granted; that on the twenty-sixth day of August, 1896, she filed her declaration of homestead on said Fish Haven ranch; that $750 of the money paid for said ranch belonged to said Elizabeth H.; that on the thirtieth day of October, 1897, the defendants Elizabeth H. and Franc S. Brereton intermarried; that on the twenty-first day of October, 1895, the plaintiff, who had then but recently arrived from England, paid in full a large amount of indebtedness, owing by said Charles B. Wilson, secured by mortgages and trust deeds, in

consideration of which said Charles B. Wilson and Elizabeth H. Wilson executed the mortgages (which are on the face deeds absolute) sought to be foreclosed in this action; that Charles B. Wilson also gave a bill of sale to the plaintiff of all of the cattle, horses and machinery on the Howdon ranch; that it was also understood and agreed that the plaintiff should have the possession, management, control and power to sell all of the property mentioned in said mortgages and bill of sale for a period of three years, and to apply the proceeds of such sales upon said indebtedness, and at the end of said period of three years, if the business proved profitable, plaintiff was to reimburse himself for all money advanced and paid by him, and, after so paying himself, to reconvey to said Charles B. Wilson and Elizabeth H. whatever remained of said property; that, in pursuance of said agreement, plaintiff took possession of all of said property, both real and personal, and has held the same, except said Fish Haven ranch, which Elizabeth H. took possession of, and ousted plaintiff, on her return from Utah, in 1896. It is also shown that said deeds exhibits "A" and "C" were signed by Elizabeth H. Wilson and Charles B. Wilson. Elizabeth admits the signing, but avers that her acknowledgment was not taken as required by law. It appears that she signed the same at the request of her husband, and then wrote the following note to the notary who certified to such acknowledgment, to wit:

"Fish Haven, Bear Lake Co., Idaho, 2nd Oct., 1895.
"J. C. Rich, Esq.

"Dear Sir: Just a line to inform you I signed the two documents of my free will and accord. Yours truly,
                              "E. H. WILSON."

Upon the receipt of said note, J. C. Rich, certified to the due acknowledgment of the execution of said deeds as having been made by E. H. Wilson. She now attacks said deeds on the ground that her acknowledgments thereto were not taken as required by law, and upon that issue the court sustained her contention.

But it is contended by counsel for plaintiff that her signature was not necessary to the instrument conveying the Howdon ranch, and that her defective acknowledgment to that in-

strument in no wise affected the validity of said instrument, as the property conveyed thereby was not the homestead of the defendant Elizabeth H. Wilson, or was not a part of the community property occupied or used by the husband and wife as a residence. Section 2505 of the Revised Statutes of 1887 provides that the husband has the management and control of the community property, with the like absolute power of disposition (other than testamentary) as he has of his separate estate; but such power of disposition does not extend to the homestead, or to that part of the common property occupied or used by the husband and wife as a residence. Under the provisions of that section, the husband had the absolute right to dispose of and convey the said Howdon ranch without the signature of his said wife, as it was not the homestead or a part of the common property occupied or used by the husband and wife as a residence. Hence, said instrument or deed which was given as security for the payment of money was valid without the wife's signature, and was not rendered invalid by the wife having signed it, and her acknowledgment thereto being defectively taken. (*Tolman v. Smith,* 85 Cal. 280, 24 Pac. 743.)

As to the other deed which conveyed the Fish Haven ranch, a different state of facts exists. At the time said deed was made, Charles B. Wilson and Elizabeth H. Wilson occupied and used the same as a residence, and it was a part of the common property. The evidence establishes beyond a doubt that Mrs. Wilson did not appear before the acknowledging officer; that such officer did not make her acquainted with the contents of said instrument, without the hearing of her husband. It shows that none of the requirements of section 2956 of the Revised Statutes of 1887 were complied with in taking said acknowledgment; and for that reason said instrument was not a valid conveyance or instrument.

Counsel for appellant contend that the finding of facts does not cover the material issues made by the pleadings, and for that reason does not settle the rights of the parties. The rule is well settled that the finding of facts must respond to all of the material issues, and, if it does not do so, the rights of the parties are not settled thereby. (*Bosquett v. Crane,* 51 Cal.

505; *Phipps v. Harlan,* 53 Cal. 87; *Ernst v. Cummings,* 55 Cal. 179; *Carson v. Thews,* 2 Idaho, 176, 9 Pac. 605; *Nephi Irr. Co. v. Jenkins,* 8 Utah, 369, 31 Pac. 986.)

Upon a careful examination of the pleadings, we conclude that there are a number of material issues made by the pleadings to which the finding of facts fails to respond. The court found that a partnership existed between the plaintiff and defendant Charles B. Wilson and others. We do not think said finding is sustained by the evidence. The evidence shows that an effort to form a partnership was made by William T. Wilson, and for a time he no doubt believed that the partnership contract contained in the transcript had been properly executed and business was being done under it. But the evidence shows that he was mistaken, and had been deceived by defendant Brereton in that regard, and, as a matter of fact, no business whatever was ever done by said contemplated copartnership. The witness G. C. Gray, who had large money transactions with defendant Charles B. Wilson, covering a considerable period of time, and who was a keen, shrewd banker, took as security mortgages on nearly all, if not all, of the property in controversy as the property of said Charles B. Wilson. Mr. Gray testified that he had done a great deal of business with said Charles B. Wilson, and that in 1894 or 1895 he (C. B. Wilson) was owing him (the witness) $6,500, and that in all his business transactions with Charles B. Wilson he had no knowledge of the existence of a partnership wherein William T. Wilson was a partner. A trust deed was given to witness Gray, as trustee, in which was included some of the property now claimed by the defendants to have belonged to the alleged partnership, and defendant Brereton testified in regard to what was said by him at the time said deed was given, as follows: "I might have said to Mr. Senter and Mr. Bunting, when the trust deed was given to Mr. Gray, that Dr. Wilson had helped Charlie before, and I was confident he would help him again; that he had sent Charlie money to put into cattle, and I thought he would advance more money. The money that Dr. Wilson sent was just an investment. I think he expected something in return." Had said witness known at that

time that Dr. Wilson and McRae were partners in said business, and that the property conveyed by said deed belonged to such copartnership, it would have been the most natural thing for him to have said so, instead of saying what he did on that occasion. The paper marked "Partnership Deed" was shown said witness, and he testified that the words, "Signed under protest," and written in pencil across said deed, were written by said C. B. Wilson about a week before he signed said deed. Charles B. Wilson testified that the agreement to enter into partnership was never executed; that the partnership was never entered into, and that no business was ever done under any partnership; that at the time he signed said agreement under protest he was very hard pinched, and needed money. The plaintiff, W. T. Wilson, testified that there was no partnership; that Brereton had led him to believe that said partnership agreement had been signed, but afterward admitted that it had not been legally signed. There is no evidence in the record to show that any business had been transacted under any partnership agreement whatever. Elizabeth H. Wilson testified that her husband had told her that plaintiff was his partner. Brereton, who was at one time the confidential friend of Charles B. Wilson, and assisted him in getting money from plaintiff, testified that a partnership existed, and bases his testimony on said partnership agreement—an agreement which he, as go-between, got Charles B. to sign under protest. Although a confidential friend (apparently) of the Wilsons, and conversant with the business of Charles B., he failed to show a single business transaction under said partnership agreement, of all the many business transactions Charles B. must have had in conducting the Howdon ranch, consisting of about one thousand acres, in buying, selling, and caring for the large number of cattle connected with said ranch, borrowing money and purchasing machinery to carry on said ranch. Out of all those many business transactions, not one is shown to have been done as a partnership transaction. The court erred in finding that a copartnership existed between William T. and Charles B. Wilson and Charles Alexander McRae.

In case the trial court should hold the acknowledgment of Elizabeth H. Wilson to the deed conveying the Fish Haven

ranch defective, the plaintiff asked to be subrogated to the rights of the mortgagee, G. C. Gray, in the mortgages conveying said ranch to said Gray, which mortgages were paid off and satisfied by the plaintiff on the second day of October, 1895. The court found, as a conclusion of law, that the plaintiff was not entitled to be subrogated to the rights of said Gray under said mortgages. It appears from the record that the plaintiff, under an agreement with defendant C. B. Wilson, paid off a large amount of indebtedness due from C. B. Wilson to said Gray and divers other persons, which indebtedness was secured by mortgages and trust deeds on the Fish Haven and Howdon ranches and other property; that the agreement was, in consideration of such payments, C. B. Wilson would give to the plaintiff security on said ranches, and a bill of sale of certain personal property to secure the money so paid, and also give him possession of said property, and the right to control and sell the same; and, in pursuance of said agreement and such payments, deeds absolute on their face were made, signed, and acknowledged as above set forth, and possession of all of said property was given to the plaintiff. Thereafter Elizabeth H. Wilson ousted the plaintiff from the Fish Haven ranch, and has since retained possession thereof. The said deed conveying said Fish Haven ranch to plaintiff is void because of the defective acknowledgment of Elizabeth H. Wilson. Plaintiff paid off a valid lien on said ranch, with the agreement and understanding that he should have a valid mortgage (which was a deed on its face) of said ranch to secure the repayment of the money so advanced by him. Under those facts, is the plaintiff entitled to be subrogated to the rights and remedies of the mortgagee whose claim he paid, as above set forth? "Subrogation," as defined by the leading text-writers and lexicographers, is the substitution of one person in the place of another as a creditor, the new creditor succeeding to the rights of the former; the mode by which a third person who pays a creditor succeeds to his rights against the debtor. Under that definition, when one person, being under obligation to do so, or is interested in so doing, pays the debts of another, he may be subrogated to all the rights, securities, and remedies of the creditor. (See Harris on Subrogation, sec. 139.) It is also held by respect-

able authority, where one, as a mere volunteer, having no interest to protect, pays the debts of another, the payment operates as an extinguishment of the claim, and the doctrine of subrogation does not apply. (*McNeil v. Miller,* 29 W. Va. 480, 2 S. E. 335; *Wadsworth v. Blake,* 43 Minn. 509, 45 N. W. 1131.) The plaintiff, as shown by the facts of this case, was not a mere volunteer, and had interests to protect. The payment of the debts of the defendant C. B. Wilson, a part of which debts were secured by mortgage on said Fish Haven ranch, under the agreement that he should have valid security on said Fish Haven ranch for such payment, clearly brings him within the rule of subrogation above stated, as the security which he received was defeated by the defendants for whom he advanced the money, and who agreed to give him valid security. It is contended by counsel for defendants that plaintiff got the kind of security he bargained for and expected to get, and for that reason he cannot be subrogated. In that counsel is mistaken. Plaintiff did not get the kind of security he bargained for and expected to get. He did not expect to get security that did not secure, and that could be defeated by the party giving it. He stipulated for security, and failed to get it, and is entitled to be subrogated to all of the rights and remedies of the creditor or creditors whose claims he paid, to the extent which said claims were a lien on said ranch. The judgment must be reversed, and the cause remanded, with instructions to grant a new trial. In case none of the parties care to introduce other testimony, the court may hear argument of respective counsel on the evidence as it appears in the record or taken from the reporter's notes, and make finding of facts and conclusions of law and enter judgment in conformity with the views expressed in this opinion. Costs of this appeal are awarded to the appellant.

Huston, C. J., and Quarles, J., concur.