## JOHN W. ELDRIDGE

*v.*

## SAMUEL G. WALKER *et al.*

1. AGENCY—*sale by agent for his own benefit, fraudulent.* Where one partner sells the undivided moity of his co-partner, as his agent, to another, for his own benefit, and thus acquires the title, without the consent of his co-partner, the latter may disaffirm the transaction and avoid the sale, at his election, if the rights of innocent purchasers have not intervened.

2. PURCHASER—*notice of equities—lis pendens.* A writ of error to reverse a decree dismissing a bill to avoid a title, is a new suit, and affords no notice to any one of anything until it is sued out. Therefore, a purchaser for a valuable consideration paid after the order of dismissal, and before the issuing of the writ of error, without other notice, will be protected against the equities of the complainant.

3. ESTOPPEL—*by failing to give notice of claim.* A purchaser of lots without notice of any infirmity in the title, who makes valuable improvements thereon under the daily observation of one claiming an equitable right to the property who neglects to give notice of his claim, will be protected against such claim.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

This was a bill in chancery, filed by John W. Eldridge against Samuel G. Walker, Martin O. Walker, Thomas Dyer and Curran Walker, to set aside a conveyance of certain lots on the grounds stated in the bill. This bill was filed June 23, 1848. Answers and replications were filed, and the cause

stood on the docket until February 10, 1866, when the cause was heard on the merits, and the bill dismissed. After the order of dismissal, other parties became purchasers of the lots, and made valuable improvements on portions of them. The complainant then prosecuted a writ of error to this court, and the decree was reversed and the cause remanded. After the cause was remanded, other parties were brought in by bill of revivor and supplemental bill, including the subsequent purchasers. The cause was again heard on the pleadings and proofs taken, resulting in the dismissal of the bill, to reverse which order this appeal was taken.

Mr. W. J. DURHAM, for the appellant.

Messrs. HOYNE, HORTON & HOYNE, for the appellees Phelps, Dodge and Palmer.

Messrs. SLEEPER & WHITON, for the appellees the heirs of Edward and Michael F. McKey.

Messrs. SMALL & MOORE, for the appellees Samuel O. and Edward S. Walker, and A. S. Chetham, Admr. etc.

Mr. GEO. W. SMITH, for the appellee Miller.

Mr. JUSTICE BREESE delivered the opinion of the Court :

It is argued by appellant, there is nothing in this record to change the character of the transaction as reported in *Eldridge* v. *Walker*, 60 Ill. 230.

That case is so reported as not to give a full account of the nature of the bill of complaint, or of its prayer, or who were the parties defendant, besides Walker, and our memory does not enable us to supply the deficiency. In the case, however, the negotiations had with Thomas Dyer by Walker resulting in a conveyance to Dyer by Frink and Walker of the lots in controversy, were examined and discussed, and on the facts then appearing in that record, it was held, that, Walker being agent for Frink in the disposal of the property, he could not

be the purchaser of Frink's undivided moity, without the consent of Frink to the transaction. Such a transaction would be presumed to be fraudulent, and would permit the owner, whose title was thus sought to be acquired, to disaffirm the sale, if he elected so to do, where the rights of innocent parties have not. intervened.

The complaint there appears to have been, that Walker, secretly and for a fraudulent purpose personal to himself, placed the title in Dyer for Walker's own benefit.

There was nothing disclosed in the case tending to relieve it from this feature. It was then inferred, from the facts shown, that Walker had studiously concealed the real nature of the transaction from Frink, hence the condemnation.

The record now before us contains testimony not in the former record, tending to show that, soon after the transaction, Walker informed Frink of it, with which he expressed himself satisfied. And why should he not have been satisfied? The firm of Frink & Walker were, on the day the lots were conveyed to Dyer, in great stress for money, to save their credit. It was a startling emergency. Walker, on the suggestion of Dyer, failing to obtain the money from sources to which he had recourse, hired the money on his own personal responsibility, at three per cent per month, and relieved the firm from its embarrassment. The lots brought, in this way, the price put upon them, and all they were worth at that time, and Frink expressed himself satisfied with the arrangement. This was in 1848, and we are informed by the answer of Dyer that Frink knew all about the arrangement, as he requested Dyer not to convey the lots to Walker without first giving him notice, saying, if Dyer would keep the property, he would be perfectly satisfied.

For some reason not explained, on July 5, 1852, Frink having been notified by Dyer that he was about to convey the lots to Walker, Frink made a quitclaim deed of his interest in the lots to appellant, Eldridge. This deed does not appear to have been recorded. No consideration is alleged, as we understand.

The next day, July 6, 1852, Eldridge filed the original bill in this cause, and it was pending from term to term in court, an order of some kind occasionally taken, until 1866, a period of fourteen years, when, on the hearing, the bill was dismissed. Here was an end to all litigation. No appeal was prayed or prosecuted, and there was a finality.

Four years thereafter a writ of error was sued out by complainant, Eldridge, to the Superior Court, to send the record to this court, the result of which is found in 60 Ill. *supra.*

This writ of error was a new suit, and was notice of nothing and to no one, until it was sued out, which, in the absence of proof, we would conjecture was in 1871. Between 1866, when a final decree dismissing the bill was passed, and the commencement of this new suit by writ of error in 1871, the purchases were made from Walker, who had obtained Dyer's title, and large and valuable improvements made on portions of the lots.

They may justly claim to be purchasers for a valuable consideration paid, without notice of any outstanding equities. They caused abstracts of title to be made and exhibited, and employed all the usual means to be advised of the true condition of the title, and there was nothing in existence to put them, or either of them, on more special inquiry. There was no suit pending, for, as to the first suit, the dismissal of the bill, unaccompanied by an appeal, was on the merits, and a finality.

The reason Frink conveyed this property to appellant in July, 1852, is not suggested. It is very evident appellant paid nothing for it, and he does not appear to have taken any interest in the litigation for all the time it was going on. Had he a real interest, he would have notified Farwell, when he was erecting his building on it, of his claim, and so of others who were expending, before and after the fire, thousands of dollars upon the property, under his daily observation and with his full knowledge. Were it necessary to invoke the doctrine of estoppel, the invocation might not be in vain as against appellant.

These defendants, who are purchasers for value without notice of any infirmity in this title, must, under the ruling, not only in 60 Ill. *supra*, but in all other cases where the question has arisen, be protected. They are innocent of any wrong, and can not be charged with any neglect of duty or want of caution or circumspection in making their purchases.

The decree of the Superior Court was right, and it must be affirmed.

*Decree affirmed.*