EDWARD S. BROWN v. UNION DEPOT STREET RAILWAY & TRANSFER
COMPANY OF STILLWATER and Another.[1]

July 17, 1896.

Nos. 9850—(76).

### Mortgagee—Failure to Assert Lien—Estoppel by Silence.

Upon the facts in this case, it is *held* that plaintiff, by his acts or silence
when he should have spoken, during the pendency of certain proceedings
under G. S. 1894, c. 76, intentionally, or by his culpable negligence, in-
duced another party to purchase property at a receiver's sale, in good faith
and in the belief that a certain mortgage lien on a part of the property had
been or would be extinguished by such sale, and as against good-faith pur-
chasers from said party, and subsequent incumbrancers, cannot now be
heard to deny that the mortgage lien was extinguished by the sale, in an
action to foreclose said mortgage as the equitable owner of the same.

Action in the district court for Washington county to foreclose a
mortgage.    E. S. Buffington, as receiver of the Stillwater Union De-
pot & Transfer Company, the Massachusetts Loan & Trust Company,
and the Stillwater Union Depot & Transfer Company, intervened.
The case was tried before Williston, J., who found in favor of inter-
venors.    From an order denying a motion for a new trial, plaintiff ap-
pealed.    Affirmed.

*Fayette Marsh*, for appellant.
*Davis, Kellogg & Severance*, for respondents.

COLLINS, J.[2]    In 1885 the Union Depot Street Railway & Transfer
Company of Stillwater, a corporation, was indebted to various persons
in the sum of $42,920.    Of this sum, $29,670 was due to the holders of
overdue interest coupons upon bonds which were already secured by
the trust deed, hereinafter mentioned, of other property belonging to
the corporation.    One of these creditors, to the extent of $3,250, was
this plaintiff, then president of the corporation.

At a meeting of the board of directors it was resolved that the
president and secretary of the corporation execute and deliver to one
O. D. Baldwin nine promissory notes, in different specified amounts,
but representing the total indebtedness as above stated, each paya-

---

[1] Reported in 68 N. W. 107.        [2] Mitchell, J., did not sit.

ble to the order of said Baldwin, and also execute and deliver to him a mortgage upon certain real property belonging to the company to secure the payment of said notes. This was done, and the mortgage, which accurately described each note, placed upon record. The mortgage was in the usual form, Baldwin being named as mortgagee; and there was nothing about it indicating that he held the notes or the mortgage in trust for any person, or that he was acting in a fiduciary capacity in any way. Among the notes, the first one mentioned in the mortgage, and the first to become due, according to its terms, was one for the sum of $3,250; and it seems to be conceded that this was plaintiff's property, Baldwin holding it in trust merely.

A very few days after this transaction, proceedings were had under G. S. 1894, c. 76, whereby a receiver was appointed for the corporation, and its property placed in his hands. This was known to plaintiff. September 1, 1885, some four months after the note for $3,250 matured, Baldwin intervened in the receivership proceedings, by filing a complaint setting forth the execution and delivery of eight promissory notes, specifically describing each; alleging that he was the owner thereof, and that he had no security except the mortgage before referred to. No mention was made of the note for $3,250 in this complaint. His prayer for relief was that he might exhibit his claims, and be permitted to share in the benefits of a general judgment to be entered in the proceedings.

March 5, 1888, upon due notice to all creditors of the insolvent corporation, and without objection, the court entered a decree in which was recited the fact that a trust deed covered a large portion of property belonging to the corporation, that the balance of its real estate was included in the Baldwin mortgage, that he had intervened, that the court had acquired jurisdiction of all parties to the action, and the subject-matter, and that all parties consented thereto; ordering and adjudging that all of the insolvent's estate be sold as one parcel or property, at not less than $100,000, free and clear of all liens of every nature, and of every creditor who had intervened, and that such liens stand against the proceeds of the sale, in lieu of the property itself. The decree recited, and it is not disputed, that at the hearing plaintiff was present, by his attorney, as the receiver of one of the creditors. Pursuant to the terms of this decree, a sale was made, and the property sold in one parcel to one Prince for the

sum of $100,000. The court found that plaintiff was present at, and knew of, the sale, and also knew of the confirmation of the sale, by order of the court, May 1, 1888. This order provided for the making of a deed by the receiver, conveying the property free and clear of all liens, incumbrances, and demands held by creditors, stockholders, or any other party who had intervened.

A deed was made as ordered, and immediately thereafter Prince, the purchaser, sold and conveyed the entire property to the Stillwater Union Depot & Transfer Company. It issued bonds in a large sum, secured by a trust deed of its entire property, and these bonds have passed into the hands of various purchasers of the same. A receiver was subsequently appointed for its property, and said receiver and the trustee under the trust deed are the intervenors in this action.

It was stipulated on the trial that the intervenors, as well as the holders of the bonds, had no notice or knowledge of the existence of the note for $3,250, or of the Baldwin mortgage, except such notice or knowledge as might have been obtained by an examination of the records and files in the public offices, and such further notice or knowledge as they would have had, in the exercise of a reasonable diligence, after an examination of such records and files. From the time of the sale down to the day of the trial of this action, the Stillwater Union Depot & Transfer Company and its receiver remained in possession of all of this property, and carried on the business.

It appears that, very soon after the execution and delivery of this note for $3,250, it was indorsed without recourse by Mr. Baldwin to plaintiff, and delivered to another person for him. This person had agreed with plaintiff to procure the money thereon for him, but failed to do so, and in 1892 it was found among his papers, and then for the first time actually placed in plaintiff's possession. He brought this action in 1893, alleging the payment of all of the mortgage notes except the one just mentioned, and, claiming to be the equitable owner of the mortgage, demanded its foreclosure by a sale of the mortgaged premises for the satisfaction of the amount due upon the note, with costs and disbursements. The court below, upon its findings of fact, ordered judgment in favor of the intervenors, and plaintiff appeals from an order denying a new trial.

The order must be affirmed.

The plaintiff, as president of the original corporation, had joined in the execution of a mortgage in which Baldwin was named as mortgagee, to secure this note and other like obligations. There was nothing whatever in the mortgage, and consequently nothing upon record, which would indicate that the secured notes, although payable to Baldwin, were, with the security itself, held in trust; nor was there anything about the transaction or the records which would suggest to the most cautious man that a secret trust existed. The plaintiff had himself, and by his own formal act, placed his claim in the hands of Baldwin, to deal with it as he chose, and had given him full power to treat it and the security as his own. This was made a matter of public record, and the public thus advised of it, without an intimation that a trust existed, or that plaintiff was a real party in interest.

When the time came for Baldwin to intervene in the proceedings, under chapter 76, he did so, still withholding from the public the fact that he held the security in trust for plaintiff and others. He filed a complaint in intervention, stating his claims under the mortgage to amount to $39,670, exclusive of interest, describing all of the notes except that now in question, which, as before stated, was the first mentioned in the mortgage, and was some time past due; exhibiting the mortgage as his property, but not referring to this note in any manner. From what appeared, it could not be presumed that it actually belonged to another party, or that it had been transferred by the mortgagee. Taking into consideration the fact that the note was long past due, the presumption would be, as was said by the court below, that it no longer existed as an indebtedness secured by the mortgage. If the mortgagee appeared to have elected to treat the note as no longer secured by the mortgage, or as no longer in existence as a debt, it is to be borne in mind that the plaintiff had previously, and without any restriction, so far as was known by the public, conferred upon him the authority so to do.

Again, it was shown that plaintiff had actual notice of the appointment of a receiver; that he had knowledge of the subsequent proceedings; that, as the receiver of another creditor, he was cited in, and, by his attorney, appeared upon the hearing of an order to show cause why the decree actually entered should not be made, whereby it was adjudged that the estate should be sold as one property, free and clear of all liens and incumbrances, including the Bald-

win mortgage; that he knew of the decree, was present at and knew of the sale under the decree, and, shortly after the making of the order of the court confirming such sale, was informed of it. He did not deny that he had notice and knowledge of all of these things, nor did he attempt to show that he ever made any objection to the proceedings had, or the manner in which they were conducted, or asserted any claim under the mortgage prior to 1893, when he brought this action, some five or six years after these intervenors had acquired their rights, relying upon what appeared of record and on file in the public offices.

If he was the owner and holder of the note before maturity, it would seem strange that he was not heard from at some time before the sale. His silence when he should have spoken can only be explained upon the theory that he relied upon receiving his money from the person to whom it appears he intrusted the note, with the assurance from him that the amount thereof should be forthcoming. If the note had not been indorsed to him by Baldwin when the latter intervened, the duty still devolved upon him to see that his interests were not sacrificed by the party in whose care he had absolutely and unqualifiedly placed them. Baldwin had the legal title to the mortgage. If he had foreclosed for the amount due on the eight notes which he presented in his claim in intervention, omitting to make any claim of indebtedness on the note for $3,250, would the plaintiff be heard, as against purchasers of the premises in good faith, to assert that, with full knowledge of the transaction, he still retained a lien on the same to the extent of the amount due on his note? Certainly he would not, for the purchasers would be protected against any equitable claim of the plaintiff to the mortgaged premises. See Solberg v. Wright, 33 Minn. 224, 22 N. W. 381. And, in principle, such a case would be identical with that at bar.

Further than this, Baldwin represented the plaintiff when he intervened in the receivership proceedings. The court, the receiver, and the public had been authorized, as well as invited, to deal with him as the absolute owner of the mortgagee; and, so far as was known, he was the only person who had any interest, legal or equitable, in it. Upon what ground can plaintiff now say that Baldwin did not and could not represent him,—especially in view of the fact that he knew just what was being done in the way of selling the property free and

clear of the mortgage lien?    The court had the power, having acquired jurisdiction of the lienholders, to decree the sale in question, and the only remedy of such holders was by appeal from the decree itself.    The plaintiff, represented as he was by his chosen trustee, could not even attack that decree by an appeal from the order of confirmation.    This was settled in Hospes v. Northwestern M. & C. Co., 41 Minn. 256, 43 N. W. 180.    See, also, Nelson v. Jenks, 51 Minn. 108, 52 N. W. 1081, wherein the same sale was under consideration.

To sum it all up, the plaintiff is conclusively bound by his own conduct in remaining silent when it was his duty to apprise the purchaser at the sale of his claim, if he had one, and is barred from now asserting a right to foreclose as an equitable owner of the mortgage, and as against those who have in good faith relied upon his failure to act when the circumstances required him to speak out.    He conceded a material fact by his silence; he had knowledge of what was being done; the court, the receiver, the purchaser at the sale, and his successors in interest, were induced to purchase because of plaintiff's failure to assert a claim; and it is fair to infer that his silence was intentional, from the fact that he remained silent when he should have been heard, and, after the intervenors have for many years acted upon a belief that the lien of the mortgage was duly extinguished by the sale, attempts to enforce payment of the note.    If his silence was not intentional, he was certainly culpably negligent.    An estoppel in pais arises when one by his acts or representations, or silence when he should speak out, intentionally or by culpable negligence, induces another to believe that certain facts exist, and such other rightfully acts on the belief so induced, and will be prejudiced by permitting the party to deny the existence of such facts.    That this is a case for the application of this doctrine is strikingly apparent.

Order affirmed.