BAHAR ET AL. *v.* TADROS, ETC. ET AL.

[No. 18,397.   Filed June 4, 1953.]

James P. *Gleason* and *George A. Pawloski*, both of
Michigan City, for appellants.

*William N. Kenefick* and *Paul F. Jackson*, both of
Michigan City and *Kenneth F. Dempsey*, of South Bend,
for appellees.

KENDALL, C. J.—The appellants, husband and wife,
brought this action to determine their interest in a cer-
tain lot in Michigan City, Indiana, upon which they had
constructed a building.

The issues were formed by a second amended com-
plaint consisting of three paragraphs, (1) to quiet title
to real estate therein described; (2) relief under the
occupying claimant act for improvements made by them
on said real estate; (3) that the sum of $25,000.00 be
declared a lien on said real estate; and that a certain
deed be declared a mortgage and be foreclosed, and that
the real estate, or so much thereof that was necessary,
be sold to pay and satisfy their claim. The appellees
filed their respective answers which placed in issue the
material allegations. Appellee, First National Bank of
Michigan City, Indiana, Trustee, filed cross-complaint
asking that the fee simple title in the real estate in
question be quieted in said Bank as Trustee, to which
answer was filed by appellant.

Trial by court. The court rendered judgment against
the appellants on their second amended complaint and
for the appellee Bank as Trustee on its cross-complaint,
and that the Bank as Trustee was entitled to have its
title quieted in said real estate.

574

Motion for new trial was filed containing two specifications, to-wit:

(1) The decision of the court is not sustained by sufficient evidence;

(2) The decision of the court is contrary to law.

The appellants' assignment of errors is as follows:

(1) The trial court erred in overruling appellants' motion for new trial.

Substantially, the facts are as follows:

On September 13, 1948, the appellees, Sam Tadros and his wife, Theresa Tadros, also known as Sam Dadrus and Theresa Dadrus, husband and wife, were the owners in fee simple as tenants by entireties of the following real estate in LaPorte County, Indiana, to-wit: Lot number one in block number one in Donnelly's Addition to the City of Michigan City, LaPorte County, Indiana; that subsequently, appellees Tadros and Tadros began construction of a building on the above-described lot, had procured materials and services from various firms and individuals who filed mechanic liens against the real estate; that after the filing of the liens, Tadros and Tadros entered into a written agreement with Leo Hyska and Alberta P. Hyska, husband and wife, to the effect that Tadros and Tadros were financially unable to complete construction of the building then in progress and were desirous of having Leo Hyska, a building contractor, furnish the material and erect the building at his expense according to the plans and specifications. Simultaneously therewith, Tadros and Tadros executed and delivered to the contractor their warranty deed to the real estate in question. It was further agreed that Tadros and Tadros were to pay the contractor $17,848.00 within thirty (30) days from

the date of the completion of the building, in addition to any other monies paid out by the contractor in satisfaction of liens and expenses connected therewith. The contractor agreed that upon payment of the above amount with reimbursement for monies expended by him within thirty (30) days after date of completion that he would deliver to Tadros and Tadros his quitclaim deed together with his wife's signature to the real estate in question; that should the appellees Tadros and Tadros fail to make payment within specified time, then the contractor would have a valid title to the real estate and appellees Tadros and Tadros would have no claim or lien and would give their consent to the contractor to sell the premises to secure his money; that thereafter the contractor became dissatisfied and wanted released from his agreement with the appellees Tadros and Tadros and so-advised them. Request was made by Mr. Sam Tadros of his brother-in-law, the appellant herein Jacob Bahar, to help him. There was evidence that appellant Bahar had talked with appellee, Mrs. Tadros, and informed her that he could not help Sam because of various difficulties. Afterwards, appellee, Sam Tadros, requested appellant, Jacob Bahar and contractor Hyska to meet in the office of attorney, George Pawloski, which was done; that the attorney, at Mr. Tadros's request, asked appellant, Jacob Bahar, to pay Sam Tadros's debts to Mr. Hyska and Mr. Nelson, who likewise had performed labor.

At another meeting in Mr. Pawloski's office, appellee Sam Tadros and appellant Jacob Bahar made an agreement with Mr. Hyska that Mr. Bahar, appellant herein, would pay the bills mentioned, that Mr. Hyska and wife would execute a quit-claim deed to the appellants and would be released of any liability therefrom, and that appellant Bahar agreed with appellee, Sam Tadros, that

if money was paid back in six months which had been advanced by him on the property, that the property would be transferred back to the appellees Tadros and Tadros; that if they did not, then the property belonged to the appellants. That the quit-claim deed was executed by Hyska and wife to the appellants at the request of Sam Tadros. Mr. Hyska was paid $150.00 and Mr. Nelson was paid $800.00, all of which money belonged to the appellant Bahar. That in the early part of December, 1948, appellant Bahar went to the home of Mr. and Mrs. Tadros and told them that he had a deed and abstract to the property and that they had six months to pay and if the money was returned to him that the property would be given back; that subsequently the appellant Bahar got plans and built a one-story store building. The appellant paid material and labor bills, three years' taxes and insurance premium and did a great deal of labor on the building itself.

Theresa Tadros testified that she did not tell Jacob Bahar that she would deed the property to him or mortgage it to him or tell him he could build a building. The following questions and answers were propounded to interpreter for Theresa Tadros and answers made:

"Q. Ask her if she has ever asked anybody about what was being done with her property between 1948 and the present time.

"A. She says she never asked anybody.

. . .

"Q. Ask her if she ever told anybody to tell Jacob to stop building a building out there.

"A. Well, she says she was down in bed at that time and she couldn't go to anybody.

. . .

"Q. Did she ever try to get in communication with Jacob at all about the building?

"A. No, she never."

That the fair market value of the store building as constructed by the appellants was $15,000.00, value of the lot $1,250.00, and that the appellees Tadros and Tadros or anyone in their behalf ever offered to, or did, reimburse the appellants for the expenditures of the building or for payment of liens pursuant to agreement.

Theresa Tadros died September 23, 1952, after appellants' motion for new trial had been overruled. The lower court determined Sam Tadros, husband, to be her sole successor in interest.

The record is wholly void of any evidence to sustain proof of title in the First National Bank of Michigan City, Indiana, as Trustee. The appellees admit the error of the trial court in this respect. Counsel for appellees say, however, that the trial court was probably led into such error in that the decree of the court was drafted by counsel for appellees without benefit of transcript. However true that may be, nevertheless, the trial court signed the decree wherein he found against the appellants on their second amended complaint and for the appellee, First National Bank as Trustee on its cross-complaint, and it is to be presumed that the decree signed by the court spoke the truth of the court and conformed to the wishes thereof. It is also to be noted that the trial court certified the bill of exceptions as being full, true and complete on November 26, 1952. The mere fact that counsel for appellees prepared the decree for the court without benefit of transcript is no excuse for an improper judgment being rendered. The counsel for appellees further argue that such error on the part of the court is harmless and cite various cases, one of which is *Seitz* v. *Kothe-Wells and Bauer* (1919), 70 Ind. App. 200, 123 N. E. 228. That was a case to foreclose a chattel mortgage to secure payment to appellee for a certain note. The court said,

"If the appellant had any lien upon, or interest in, the property covered by the mortgage to the appellee, so that he was injured, as to his property, by said decision, he might be in a situation to complain; but here he is not complaining of the action of the court in finding and decreeing such want of interest. He is in the attitude of confessing that the decree is right, and that he has no interest in the property, yet is seeking to question the correctness of the ruling of the court upon the demurrer." We do not agree with appellees' contention. The facts of the instant case are distinguishable from *Seitz* v. *Kothe-Wells and Bauer, supra*. In the instant case, the appellants contend that the decree of the court quieting title in the Bank as Trustee is injurious and complain of the action of the court. In so doing, they do not confess that the decree of the court is right and that they have no interest in the property. The judgment as entered by the court stands today as a valid judgment quieting the title to the real estate which the appellants sought to quiet title in themselves. The court found against them. We believe that this is a finding and judgment contrary to the interest claimed by the appellants and, in view of the specifications for new trial, such a finding without evidence constitutes reversible error.

The question presented by appellants' second amended complaint is whether they can recover for the improvements placed thereon under the provisions of the occupying claimant statutes. Sec. 3-1501, Burns' 1946 Replacement, provides as follows:

"*Occupying claimant may recover for improvements made by him.*—When an occupant of land has color of title thereto, and in good faith has made valuable improvements thereon, and is afterward, in the proper action, found not to be the rightful owner thereof, no execution

shall issue to put the plaintiff in possession of the property after filing the complaint hereinafter mentioned, until the provisions of this act are complied with. (Acts 1881 (Spec. Sess.) ch. 38, §694, p. 240.)"

Sections 3-1502 and 3-1504, respectively, Burns' 1946 Replacement, are as follows:

"*Occupant recovers for lasting improvements made by party under whom he claims.*—The occupying claimant may recover the value of lasting improvements made by the party under whom he claims, as well as those made by himself; and any person holding the premises as a purchaser, by an agreement in writing from the party having color of title, shall be entitled to this remedy. (Acts 1881 (Spec. Sess.), ch. 38, §702, p. 240.)"

"*What is color of title.*—Any occupant of land who can show a connected title in law or equity, derived from the records of any public office, or who holds the same by purchase or descent from any person claiming title derived as aforesaid or by deed duly recorded, has color of title, within the meaning of this act. (Acts 1881 (Spec. Sess.), ch. 38, §701, p. 240.)"

The question therefore arises, what was the appellants' color of title under which permanent improvements were made to the real estate? The appellees Tadros and Tadros undisputedly executed what was termed a warranty deed to Mr. and Mrs. Hyska and which the parties agree that a court of equity would treat as a mortgage. Whatever rights, title or interest Mr. and Mrs. Tadros had were transferred to Hyska and Hyska whether it be by deed or mortgage and were never revoked or set aside. Subsequently, Hyska and Hyska by the execution of what purported to be and known by appellants as a quit-claim deed, assigned and transferred their title and rights and

interest in the real estate in question to the appellants. Subsequently, improvements were made on the real estate of a valuable and lasting nature. Under the facts and circumstances of the instant case, the conferences in the office of attorney Pawloski it appears to this court that under the terms of §3-1504, *supra*, defining color of title to the effect, "any occupant of land who can show a connected title in law or *equity*," that the appellants had sufficient color of title by the acceptance of such quit-claim deed that justified them in making the improvements under such color of title and after so doing a court of equity will not stand idly by and say that the improvements were not made in good faith and that the appellants are not entitled to reimbursement. It is apparent that the occupying claimant statute was passed by the Legislature to protect the rights of people under circumstances like the present. We recognize the general rule that if improvements are mistakingly made, even though the claimant acted in good faith and under color of title, he could not recover. In this case, we do not believe it can be said that such improvements were mistakingly made by appellants. In the case of *Westerfield, Administrator* v. *Williams, Administrator* (1877), 59 Ind. 221, 224, the court announced the following rule:

> "Under the common law, one who had made improvements on the land of another, under the belief that he was himself the owner of the land, had to lose his improvements in case of a recovery of the land from him by legal proceedings. It is only through what is known as the occupying claimant law, which is of statutory origin, that the occupant of land under such circumstances can receive any compensation for his improvements. *Chesround* v. *Cunningham*, 3 Blackf. 82; *Graham* v. *The C. & N. C. J. R. R. Co.*, 36 Ind. 463."

We believe that there is a wide distinction between the rights of one party claiming title to real estate and the rights of another claiming merely for improvements made in good faith by one having color of title. *Harmon* v. *Scott* (1922), 78 Ind. App. 554, 133 N. E. 141. In that case the court found that Scott had a color of title under the occupying claimant law; that he had made improvements in good faith believing that he was the owner of the fee.

> The rule is further announced in the case of *Canal Bank* v. *Hudson* (1884), 111 U. S. 66, wherein the court quotes from the case of *Cole* v. *Johnson* (1876), 53 Miss. 94, wherein it is said,

> "Our view is, that, in order to deprive the occupant of land under color of title, of the value of permanent improvements erected thereon, there must be brought home to him either knowledge of an outstanding paramount title, or some circumstance from which the court or jury may fairly infer that he had caused to suspect the invalidity of his own title, but that this cannot be inferred merely because it could have been demonstrated by the records of the county."

We do not believe that under the facts as they have been presented to us that there are such circumstances which the court might fairly infer that the appellants had any cause to suspect the invalidty of their title while in the process of making such improvements.

In the case of *Harmon* v. *Scott, supra,* the court quotes the case of *Fee* v. *Cowdry* (1885), 45 Ark. 410.

> In certain cases the law makes provisions for implied liens which are based upon the general consideration of justice even without agreements therefor.

*Carpenter* v. *Dummit* (1927), 221 Ky. 67, 79; 10 R. C. L. 351:

"The vital principle is that a party who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit. It is akin to the principle involved in the limitation of actions, and does its work of justice and repose where the statute cannot be invoked." *Dickerson* v. *Colegrove* (1879), 100 U. S. 578.

"Another recognized proposition seems to be that if a man, either in express terms or by conduct, makes a representation to another of the existence of a certain state of facts which he intends to be acted upon in a certain way, and it be acted upon in that way, in the belief of the existence of such a state of facts, to the damage of him who so believes and acts, the first is estopped from denying the existence of such a state of facts. And another proposition is that if a man, whatever his real meaning may be, so conducts himself that a reasonable man would take his conduct to mean a certain representation of facts, and that it was a true representation, and that the latter was intended to act upon it in a particular way, and he with such belief does act in that way to his damage, the first is estopped from denying that the facts were as represented." Brett, J., in *Carr* v. *London & N. W. R. Co.* (1875), (Eng.) 316; 50 A. L. R. 684.

"The doctrine proceeds upon the principle that one person will not be permitted, in equity, to enrich himself by the loss or at the expense of another, when the loss would have been avoided had the former acted honestly and in good faith. His silence, in such case, is tantamount to a fraudulent concealment of his title, and to the extent that the

party in possession has been thereby misled into the making of improvements that he otherwise would not have made, a court of equity grants relief by charging the value of the improvements as a lien upon the estate to which they have been added." *Preston* v. *Brown* (1878), 35 Ohio St. 18.

It is said to be a very familiar rule of the law of estoppel that if the owner of an estate stands by and sees another erect improvements on the estate in the belief that he has a right to do so and does not interpose to prevent the work, he will not be permitted to claim such improvements after they are erected. 76 A. L. R. 304 and cases cited.

In the instant case appellees Tadros and Tadros executed their warranty deed as well as the agreement to Hyska and Hyska for the express purpose of improvements being made on the real estate in question. There was evidence that the appellee Theresa Tadros trusted her husband with the property. The following question was propounded to the interpreter for Mrs. Tadros and answer given:

"Q. Ask her if she did not depend on Sam to look after that property.

"A. Yes, she trusted her husband with the property."

We believe it is a general recognized rule of law that equity recognizes a lien which is based upon general consideration of justice between the parties to the transaction involved. Such a lien may result by implication from a duty resting on the owner of property which is the subject matter of the lien and the lien is completed by equity in pursuance of the maxim quoted in *Carpenter* v. *Dummit, supra,* "that is deemed done that ought to be done". Failure on the part of a court of equity to recognize the general

rule and to grant relief under the occupying claimant statute under the facts of this case upon which this decision is made would have the effect of granting immunity to the owner and thusly permit him to the use and benefits of the improvements made on his property. It is apparent that the appellants did have an equitable lien upon the real estate based upon the general considerations of justice and that it is the duty of a court of equity to see that is done that ought to be done.

We do not deem it necessary to decide the question of agency as to whether Mr. Tadros was the agent of Mrs. Tadros. There was no evidence of objection on the part of either during the process of constructing the improvements on this real estate. It is a general rule that silence and acquiescence, when good faith requires a person to speak or act, are, in the matter of estoppel, equivalent to express affirmation. *Bausman* v. *Faue* (1891), 45 Minn. 412. *H. W. Wright Lumber Co.* v. *McCord* (1910), 145 Wis. 93; *Hill* v. *Epley* (1858), 31 Pa. 331; *Brown* v. *Union Depot Street R. & Transfer Co.* (1896), 65 Minn. 508; *Brookhaven* v. *Smith* (1890), 118 N. Y. 634; *Kirk* v. *Hamilton* (1880), 102 U. S. 68, 26 L. Ed. 79; *Eldridge* v. *Walker* (1875), 80 Ill. 270; *Gray* v. *Bartlett* (1838), 20 Pick. (Mass.) 186; *Milburn* v. *Michel* (1921), 137 Md. 415.

In the leading American case, *Wendell* v. *Van Rensselaer* (1815), 1 Johns Ch. (N. Y.) 353, the law was thus laid down by Chancellor Kent:

"There is no better principle established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares that if one man knowingly, though he does it passively by looking on, suffers another to purchase and expend money on land under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his

legal right against such person. It would be an act of fraud and injustice and his conscience is bound by this equitable estoppel. 'Qui tacet consentire vidtur'. 'Qui potest et debet vetare, jubet' ".

We must, therefore, conclude that the decision of the court is not sustained by sufficient evidence and is contrary to law. Since the cause is to be reversed, we deem it unnecessary to comment on other alleged errors.

Judgment reversed with instructions to sustain appellants' motion for new trial.

Crumpacker, J., not participating.

NOTE.—Reported in 112 N. E. 2d 754.